FILED
MAY - 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INNOVATIT SEAFOOD SYSTEMS, LLC, )
16 East Ellendale Estates Court )
Houma, Louisiana 70360 )
)
)
Plaintiff, )
)
v. )
)  CASE NUMBER 1:06CV00825
COMMISSIONER FOR PATENTS, )  JUDGE: James Robertson
600 Dulany Street )  DECK TYPE: General Civil
Alexandria, VA 22314 )  DATE STAMP: 05/04/2006
)
Defendant. )

## COMPLAINT

1. This suit arises under the patent laws of the United States, 35 U.S. Code, and seeks a review of the decision of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office in patent application No. 09/949,704. This decision was adverse to the inventor, Ernest A. Voisin ("Voisin"), rejecting claims of an application entitled "A Process of Eliminating Bacteria in Shellfish, of Shucking Shellfish and An Apparatus Therefor."

2. Review by this Court is specifically provided for under 35 U.S.C. § 145 and jurisdiction is also proper under 28 U.S.C. §§ 1331(a) and 1338, as the matter in controversy arises under the patent laws of the United States. Venue in this Court is proper under 35 U.S.C. § 145.

3. Plaintiff, Innovatit Seafood Systems, LLC, is the assignee of the entire right, title and interest in and to the invention of Voisin relating to a post-pressurized bacteria-free raw shellfish (e.g., oysters) that have been subjected to high pressure in the range of 20,000 to 50,000 p.s.i. to render the product substantially bacteria-free, while maintaining sensory characteristics of raw shellfish, disclosed and claimed in U.S. patent application Serial No. 09/949,704 filed in

the U.S. Patent and Trademark Office on September 1, 2001 and entitled "A Process of Eliminating Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor."

4. Plaintiff is a citizen of the State of Louisiana, having its principal place of business at 116 East Ellendale Estates Court, Houma, Louisiana 70360.

5. The U.S. Patent and Trademark Office Examiner determined that Claims 5 and 27 through 38 are anticipated under 35 U.S.C. § 102(e) by patent No. 5,773,064 of Tesvich et al.

6. After an administrative hearing based in part on evidentiary records developed by plaintiff and in part on the arguments of plaintiff contained in the brief filed by plaintiff's counsel, the Board of Patent Appeals and Interferences, by a written decision dated February 24, 2006, erroneously affirmed Examiner's rejection of the claims. A copy of the Board's decision is attached hereto as Exhibit A.

7. Plaintiff submits that the claims of the application are novel and not anticipated by the cited prior art.

**WHEREFORE**, the plaintiff prays:

1. That the Court issue an order reversing the decision of the Board of Patent Appeals and Interferences and allowing claims 5 and 27 through 38 of the application;

2. That this Court direct the U.S. Patent and Trademark Office to issue a patent thereon to Innovatit Seafood Systems, LLC as the assignee of the entire right, title and interest to the invention; and

3. For such other relief as the Court deems proper.

Respectfully submitted,

*[signature]*

Richard J. Oparil
D.C. Bar No. 409723
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)

Counsel for Plaintiff
Innovatit Seafood Systems, LLC

*Of Counsel:*

Scott A.M. Chambers, Ph.D.
D.C. Bar No. 450442
PATTON BOGGS LLP
8484 Westpark Drive
McLean, Virginia 22102
(703) 744-8000
(703) 744-8001 (fax)

#4801246

The opinion in support of the decision being entered
today was *not* written for publication and is *not* binding
precedent of the Board

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

Ex parte ERNEST A. VOISIN

Appeal No. 2005-1558
Application 09/949,704



HEARD: January 26, 2006

Before OWENS, WALTZ, and FRANKLIN, *Administrative Patent Judges*.

WALTZ, *Administrative Patent Judge*.

**DECISION ON APPEAL**

This is a decision on an appeal from the primary examiner's final rejection of claims 5 and 27 through 38, which are all of the claims pending in this application. We have jurisdiction pursuant to 35 U.S.C. § 134.

According to appellant, the invention is directed to a post-pressurized bacteria-free raw shellfish (e.g., oysters) that has been subjected to high pressure in the range of 20,000 to



FILED COPY
MAY - 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT
06 0825

Appeal No. 2005-1558
Application No. 09/949,704

50,000 p.s.i. to render the product substantially free from pathogenic naturally-occurring marine bacteria while the sensory characteristics of raw shellfish are retained (Brief, unnumbered page 2).[1] Appellants states that every claim is believed to be "separately patentable" (Brief, unnumbered pages 3-4). However, appellant merely recites the limitations of each claim and states that the "cited prior art fails to disclose" these limitations. Without more specificity, we determine that appellant has not complied with 37 CFR § 1.192(c)(7)(2003)("[m]erely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable"), and thus the claims stand or fall together. Accordingly, we select claim 5 from the grouping of claims and decide the ground of rejection in this appeal on the basis of this claim alone. See In re McDaniel, 293 F.3d 1379, 1382-83, 63 USPQ2d 1462, 1464 (Fed. Cir. 2002). Representative independent claim 5 is reproduced below:

> A post-pressurized raw shellfish that is pressure-shucked and free from pathogenic naturally-occurring marine bacteria and which has undergone treatment by exposing said raw shellfish to pressure of about between 20,000 p.s.i. and 50,000 p.s.i, said raw shellfish retaining sensory characteristic of raw product.

---

[1] We refer to and cite from the Substitute Brief dated June 13, 2003.

2

Appeal No. 2005-1558
Application No. 09/949,704

The examiner has relied on Tesvich et al. (Tesvich '064), U.S. Patent No. 5,773,064, issued on June 30, 1998, as the sole evidence of unpatentability. Appellant has relied on Tesvich et al. (Tesvich '601), U.S. Patent No. 5,976,601, issued on Nov. 2, 1999, as evidence for patentability (Brief, page 10; Exhibit 5). Claims 5 and 27-38 stand rejected under 35 U.S.C. § 102(e) as anticipated by Tesvich '064 (Answer, page 3).

Based on the totality of the record, we *affirm* the examiner's rejection on appeal essentially for the reasons stated in the Answer, as well as those reasons set forth below.

## OPINION

The examiner finds that Tesvich discloses a raw shellfish product free of pathogenic bacteria, including *Vibrio vulnificus* bacteria, where the shellfish is an oyster with a flexible band closing its shell kept at a refrigerated temperature, and is presented to the consumer in its shucked state (Answer, page 4). The examiner notes that the claims are recited in product-by-process format and that patentability is determined based on the product itself, not the method of producing the product (id.). Therefore the examiner finds reasonable belief that the product of Tesvich '064 is the same as the claimed

3

Appeal No. 2005-1558
Application No. 09/949,704

product (id.).

Appellant agrees with the examiner that the claims on appeal are written in the product-by-process format (Brief, unnumbered page 6; Answer, page 4). Appellant also agrees that, with such a claimed format, it is the patentability of the product which must be determined, not the process of making the product (id.; see In re Hirao, 535 F.2d 67, 69, 190 USPQ 15, 17 (CCPA 1976); and In re Wertheim, 541 F.2d 257, 271, 191 USPQ 90, 103 (CCPA 1976)). As held by a predecessor of our reviewing court:

> ... the lack of physical description in a product-by-process claim makes determination of the patentability of the claim more difficult, since in spite of the fact that the claim may recite only process limitations, it is the patentability of the *product* claimed and *not* of the recited process steps which must be established. We are therefore of the opinion that when the prior art discloses a product which reasonably appears to be either identical with or only slightly different than a product claimed in a product-by-process claim, a rejection based alternatively on either section 102 or section 103 of the statute is eminently fair and acceptable. As a practical matter, the Patent Office is not equipped to manufacture products by the myriad of processes put before it and then obtain prior art products and make physical comparisons therewith.
> In re Brown, 459 F.2d 531, 535, 173 USPQ 685, 688 (CCPA 1972), emphasis in original.

In Brown, the court was in effect saying that the Patent Office bears a lesser burden of proof making out a case of prima facie unpatentability for product-by-process claims because of their peculiar nature than would be the case when a product is claimed

4

Appeal No. 2005-1558
Application No. 09/949,704

in the more conventional fashion. See *In re Fessmann*, 489 F.2d 742, 744, 180 USPQ 324, 326 (CCPA 1974).

We agree with the examiner that the product of Tesvich '064 reasonably appears to be identical to the product recited in claim 5 on appeal. The raw shellfish of claim 5 on appeal is (1) post-pressurized and pressure shucked; (2) free from pathogenic naturally-occurring marine bacteria; and (3) retains the sensory characteristics of raw product (see claim 5 on appeal as reproduced above). Tesvich '064 discloses raw shellfish which has been (1) shucked (col. 3, ll. 5-7 and 61-65); (2) is free of harmful pathogenic bacteria (reduced to undetectable levels; col. 2, l. 65-col. 3, l. 1; col. 3, ll. 45-49; and col. 6, ll. 19-24); and (3) retains its natural fluids or liquor, thus retaining its natural flavor and raw texture (col. 3, ll. 1-4; col. 5, ll. 52-55; and col. 6, ll. 15-18). Thus the only difference between the claimed raw shellfish and the product of Tesvich '064 is that the claimed product has been post-pressurized and pressure-shucked while the product of Tesvich '064 has been shucked conventionally, i.e., mechanically or manually shucked. For reasons discussed below, we find no probative evidence that the manually or mechanically shucked product of Tesvich '064 differs from the pressure-shucked claimed product.

5

Appeal No. 2005-1558
Application No. 09/949,704

Appellant argues that the cited reference does not disclose a bacteria-free product, as evidenced by later admissions of the same inventors (Tesvich '601)(Brief, unnumbered page 6). Appellant argues that Tesvich '601 (Exhibit 5) acknowledges that the heating of oysters in their shells to temperatures above 53 °C. (127.4 °F.) causes edges of the meat to curl and shrink due to protein degradation, thus "cooking" the oyster (Brief, unnumbered page 10). Appellants also argue that Tesvich '601 teaches that the water bath temperature must be between 49 and 55 °C. to kill *Vibrio vulnificus* bacteria (id.). Thus appellants assert that Tesvich '064 does not disclose a "practical" method of eliminating bacteria, the product of the '064 patent is "cooked," and undue experimentation is required to follow the '064 patent to achieve the claimed result (Brief, unnumbered pages 10-11).

These arguments are not persuasive. Tesvich '064 repeatedly teaches that the shellfish product should be in a "raw, uncooked state" (e.g., col. 3, ll. 61-65) and that the parameters of the process should be chosen so "as to not cook the mollusk ... the mollusk remains in a raw state" (col. 5, ll. 50-52) while the pathogenic bacteria are reduced to an undetectable level (col. 2, ll. 44-46; col. 2, l. 66-col. 3, l. 4). We determine that it

6

Appeal No. 2005-1558
Application No. 09/949,704

would be only *routine experimentation* for one of ordinary skill in this art to optimize the immersion time and water bath temperature, depending on the grade size of the oyster, to produce the desired uncooked bacteria-free raw oyster product of Tesvich '064 (see col. 5, ll. 37-56; col. 6, ll. 19-31). See *In re Hafner*, 410 F.2d 1403, 1405, 161 USPQ 783, 785 (CCPA 1969)(different standards for enablement under section 112 for an application and a prior art reference); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564, 37 USPQ2d 1618, 1623 (Fed. Cir. 1996)("The fact that some experimentation is necessary does not preclude enablement; what is required is that the amount of experimentation 'must not be unduly extensive' [Citation omitted]"). We note that Tesvich '064 specifically teaches that the prior art uses heating and cooling to destroy unwelcome bacteria but the temperatures and duration employed are sufficient to cook the meat, while Tesvich desires to produce a product in the raw state that is bacteria-free (col. 2, ll. 8-23). Finally, we note that Tesvich '601 merely confirms the above discussed optimization, teaching that different temperatures and time durations have been found to give excellent results, depending on the size of the oysters and the internal temperature of the oyster meat (col. 1, ll. 51-62; col. 2, ll.

7

Appeal No. 2005-1558
Application No. 09/949,704

25-42; col. 4, ll. 26-39). If the temperature of the water bath and duration of the heat treatment were sufficient to "cook" the oyster meat of selected oysters (Tesvich '601, col. 4, ll. 26-39), one of ordinary skill in this art would not have employed these conditions in view of the teachings of Tesvich '064 discussed above.

Appellant argues that the claimed terms "post-pressurized" and "pressure-shucked" are terms describing physical characteristics of the product (Brief, unnumbered page 11; Reply Brief, page 4). Appellants further argue that evidence has been submitted that shows the end product of the claims differs from the end product of the reference (Brief, unnumbered page 6). This evidence comprises Exhibits 1 through 4 and Exhibit A, including the statement of Dr. Kilgen, the letter from Drs. Bell and Bankston, the studies by Dr. Xu, and the Declarations under 37 CFR § 1.132 by Mr. Nelson and Mr. Sunseri (Brief, unnumbered pages 7-10; Reply Brief, pages 4-8 including Exhibit A). We do not find this evidence persuasive for the following reasons.

The Kilgen letter (Exhibit 1) is not probative evidence since the letter only refers to the processes of "thermal or heat processing" and "high pressure processing (HPP)" in general, with no specific statement regarding the specific process as now

8

Appeal No. 2005-1558
Application No. 09/949,704

claimed on appeal versus the specific heat treatment of Tesvich '064 (see the Answer, page 6). The conclusions set forth in the Kilgen letter specifically depend "on the level of heat," indicating that new permanent covalent bonds may be formed (third full paragraph, last sentence, emphasis added). Accordingly, there is no conclusive evidence in this letter that the oysters as claimed in claim 5 on appeal differ from those produced by the process of Tesvich '064.

The letter from Drs. Bell and Bankston (Exhibit 2) has the same deficiency as discussed above, namely it only refers generically to oysters produced by "Motivatit's high pressure process (HPP)" and "Ameripure," but does not specifically identify the processes used to produce these oysters. Similarly, the letter from Dr. Bell and the accompanying study by Dr. Xu (Exhibit A) do not specify the exact conditions under which the oysters were produced. Finally, we note that the Bell-Bankston letter (Exhibit 2) admits that the final product oyster from Motivatit and Ameripure are both "vibrio free" and only differ in physical condition "depending on the application of the shucking knife" (Exhibit 2, third paragraph; see the Answer, page 6).

The Nelson Declaration is not convincing since this Declaration again does not identify the specific process

9

Appeal No. 2005-1558
Application No. 09/949,704

conditions used to produce the oysters tested (Declaration, page 3). The Declarant further states that the oyster meat's outer membrane is "usually" cut with the Tesvich oyster but does not specify if this was the product actually tasted (Declaration, page 3). Declarant also states that the Tesvich process is "very difficult" to control and results in "over cooking" the less dense oysters with attendant curling and shrinkage of the meat (Declaration, page 2). However, as correctly noted by the examiner (Answer, page 7) and discussed above, the Tesvich '064 process results in control of temperature and duration of immersion, depending on oyster size, to not cook the oyster meat. Declarant specifically states that the Tesvich process involves batches of oysters "containing oysters of varying sizes and densities" (Declaration, page 2). This statement goes directly against the teachings of Tesvich '064, who teaches that "[d]uring separation step 14 the product is also separated into grades according to size" (col. 5, ll. 11-13). Tesvich '064 also teaches that the conditions used in his "mild heat treatment process" that are necessary to eliminate bacteria and allow the oyster to remain uncooked depends on the time, temperature and "grade size" of the oyster (col. 5, ll. 44-47). Accordingly, there is no convincing evidence that the final oyster product

10

Appeal No. 2005-1558
Application No. 09/949,704

tasted by Nelson is the final oyster product of Tesvich '064.

The Sunseri Declaration is essentially the same as the Nelson Declaration and we find the same deficiencies in this Declaration. Accordingly, we adopt our comments from above.

For the foregoing reasons and those stated in the Answer, we determine that the examiner has established a prima facie case of anticipation based on the reference evidence. Based on the totality of the record, including due consideration of appellant's arguments and evidence, we determine that the prima facie case of anticipation has not been adequately rebutted. See *In re Brown, supra*. Therefore we affirm the examiner's rejection of claim 5, and claims 27 through 38 which stand or fall with claim 5, under 35 U.S.C. § 102(e) as anticipated by Tesvich '064.

### OTHER ISSUES

In the event of further prosecution of this application or continuing applications before the examiner, the examiner and appellant should consider the patentability of the claimed subject matter now on appeal in view of Yasushi et al. (Yasushi), Japanese unexamined patent application No. H4-356156, published December 9, 1992. This prior art reference was cited and applied in related application no. 09/121,725, and a rejection of the process claims in 09/121,725 was affirmed by the Board of Patent

11

Appeal No. 2005-1558
Application No. 09/949,704

Appeals & Interferences in a decision mailed March 10, 2003 (see the Brief, unnumbered page 1; Appl. No. 09/121,725 is now on appeal as Appeal No. 2005-1101). Since the issue in Appl. No. 09/121,725 is anticipation of the process of making the oyster product now claimed in this application, the Yasushi reference would appear relevant to the product claims.

### SUMMARY

The decision of the examiner is affirmed.

Appeal No. 2005-1558
Application No. 09/949,704

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR § 1.136(a)(1)(iv)(2004).

**AFFIRMED**

| | |
|---|---|
| *Terry J. Owens* | ) |
| TERRY J. OWENS | ) |
| Administrative Patent Judge | ) |
| | ) |
| *Thomas A. Waltz* | ) |
| THOMAS A. WALTZ | ) BOARD OF PATENT |
| Administrative Patent Judge | ) APPEALS AND |
| | ) INTERFERENCES |
| *Beverly A. Franklin* | ) |
| BEVERLY A. FRANKLIN | ) |
| Administrative Patent Judge | ) |

TAW/tf

13

Appeal No. 2005-1558
Application No. 09/949,704

KEATY PROFESSIONAL LAW CORPORATION
THOMAS S. KEATY
2533 AMERICAN WAY
PORT ALLEN, LA 70767

14