# A PROCESS OF ELIMINATION OF BACTERIA IN SHELLFISH, OF SHUCKING SHELLFISH AND AN APPARATUS THEREFOR

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is based on my provisional applications Serial Nos. 60/071,819

5     filed on January 20, 1998, 60/074,582 filed on February 13, 1998, and 60/086,484 filed

on May 26, 1998, the full disclosures of which are incorporated herein.

## BACKGROUND OF THE INVENTION

This application relates to a process of treatment of raw molluscan shellfish, and

more particularly to a process for destroying bacteria in shellfish, such as for example

10     oysters.

In recent years, considerable attention has been paid in the media to tragic results

of consumption of raw oysters where the individuals became infected with life

threatening pathogenic organisms.  Such bacteria as Vibrio Vulnificus live in marine

environment, especially in warm waters, usually higher than 25°C.

15     Vibrio Vulnificus has been isolated from estuarine and marine waters of the U.S.

Gulf Coast, east coast, and west coast; it was also reported on other continents.  The

bacteria may transfer from water to the shellfish inhabiting the body of water, especially

filter-feeding mollusks, where bacteria can multiply mostly in the gut region.

Vibrio is a genus of motile curved and rod-shaped Gram-negative bacteria. Other

20     well-known vibriones are Vibrio cholerae and Vibrio Parahaemolyticus. Vibrio

Parahaemolyticus is a common cause of gastroenteritis in some cultures, where

consumption of food is particularly high, such as for example Japan.



EXHIBIT

Vibrio Vulnificus is a halophilic species, the strains of which are similar to Vibrio Parahaemolyticus and Vibrio alginolyticus. Vibrio Vulnificus thrives in warm waters. Ingesting uncooked or undercooked shellfish that contain vibrios, especially oysters, transmits it. After a brief incubation period, often as short as two hours, Vibrio Vulnificus

5    causes septicemia and cellulitis. Physical symptoms include indigestion, cramps, nausea, vomiting, headache, weakness, fever and chills.

Usually, this food poisoning subsides spontaneously within two days. Occasionally, however, it is more severe. Persons with pre-existing hepatic disease or compromised immune system are especially in danger. Infection may occur not only

10    through digestion of raw seafood but also from wound infection following exposure to seawater.

While fatal outcomes are extremely rare, the unfortunate events have been widely publicized, making the public aware of a potential life threatening exposure to the Vibriones. The fear of the bacteria poisoning is so high that the federal government

15    issued a special warning advising the public of the potential dangers of raw oyster consumption. It has also been suggested that no harvesting of oysters be conducted during warm months in the Gulf of Mexico, so as to minimize the health risk associated with such food poisoning.

Public fear of the potential dangers associated with bacteria poisoning through raw

20    oyster consumption adversely affected an important Louisiana industry - oyster harvesting. Market share of Gulf oysters shrunk, and many fishermen found that even

2

oysters harvested from safe beds are not in such a great demand as they used to be and that the price has fallen drastically.

     Still, consumption of raw molluscan shellfish is so widespread in the South that many restaurants continue to carry raw oysters as part of their menu. Even though many

5    restaurants post a warning sign of the possible danger to a segment of the public with liver or immune system disorders it rarely stops dedicated gourmands.

     To prevent poisonous consumption of pathogenic organisms, various methods have been suggested for treating raw shellfish, for example with heat or irradiation, in an effort to eliminate or minimize the public health danger. For example, Patent No. 5,679,392

10   (the '392 patent) issued on October 21, 1997 for "Heat Treatment of Raw Molluscan Shellfish" discloses a method for preparing raw molluscan shellfish in the shell or out of the shell employing a mild heat treatment and cold storage.

     According to the '392 patent, the shellfish placed in a polymer or metallized bag is lowered into a circulating bath of water at a temperature of between 120°F - 130°F for

15   30-45 minutes, after which time it is cooled in a cold water bath to a temperature between 28°F - 32°F. The product is then transferred to a cool water bath, where it is retained for 15-20 minutes and becomes ready for storage in a refrigerated state at 32°F - 34°F. The patent disclosure asserts that the mollusk remains in a raw state and in the shell throughout the process, while the number of pathogenic bacteria is reduced to an

20   undetectable level.

     While this process may be satisfactory for some products, it is believed that

3

heating of the shellfish will affect the sensory qualities of the product, making it less desirable for consumption as raw shellfish. Heat treatment as a means of controlling microorganisms and bacteria in food products results in diminished taste and reduced nutritional content. Therefore, elevated temperatures are considered unsatisfactory for

5    processing of raw oysters where the purpose of the process is to retain sensory qualities of oysters and sell them on a half-shell.

Ionizing irradiation was tested as one of the methods of destroying harmful bacteria in live shellfish. However, this process is relatively expensive and has not yet obtained approval by the Federal Food and Drug Administration. Other known attempts

10    to purify raw oysters involve depuration, wherein oysters are soaked in a tank of water for days at a time in an attempt to purge and cleanse the mollusk of the bacteria. So far, there have been no reports on the success of this method in destruction of bacteria in raw oysters.

Other suggested methods of destroying Vibrio Vulnificus involve cold, freezing,

15    vacuum packaging, use of GRAS (diacetyl) compounds, suspension relaying into offshore water, and food condiment treatment. While some of these methods are relatively simple to implement, most of them have problems - either too expensive, ineffective, time consuming, or failed to receive FDA approval.

It was also suggested to refrigerate oysters immediately after harvesting at 7.2°C or

20    less in an attempt to control multiplication of bacteria. However, cold treatment greatly reduces but does not eliminate bacteria present in oysters during harvesting for a storage

4

period considered normal for shucked or shell stock oysters.

Heat treatment, for example at 50°C for 10 minutes, kills the bacteria; this method is currently used on a commercial scale for live shell stock oysters. However, this method also kills the oysters. Additional drawback of this method is that it is difficult to control

5    the temperature of commercial size batches when the size and shell thickness of oysters differ from batch to batch.

Vacuum packaging combined with freezing tends to reduce the level of Vibrio Vulnificus. However, this method is relatively expensive, reduces quality, so that the product treated in this manner may not find a wide acceptance with the public.  When

10    diacetyl, an FDA approved preservative was used on raw oysters, at levels of 0.05% or greater, it demonstrated decrease in the level of the bacteria, but did not guarantee complete elimination thereof.

When oysters were relayed into high salinity environment of offshore waters, Vibrio Vulnificus bacteria were reported to decrease to a level found in oysters normally

15    harvested in more cold months, where no reported cases of food poisoning were recorded. However, oyster predators and parasites are a factor with this very expensive method. The use of UV light and micro-filtration treatment of seawater did not depurate the bacteria from oyster tissue.

Some studies examined the effect of Tabasco sauce on freshly shucked oysters. In

20    about ten minutes, the level of Vibrio Vulnificus on the surface of tested oysters was significantly reduced, but the levels of the bacteria within the oyster meat remained

almost unaffected.

In recent years, a new technology has emerged - high pressure processing of foods. The leading manufacturer of high-pressure food processors is ABB Pressure Systems AB of Vasteras, Sweden and its affiliate, ABB Autoclave Systems, Inc. of Columbus, Ohio.

5    According to industry sources, this company makes equipment for processing of juices, fruits, vegetables, fruit-based beverages, jams, sauces, soups and meats. The company's literature claims that most bacteria in food can be killed by pressures in the range of 400 - 800 MPa (58,000 p.s.i. – 116,000 p.s.i.).

A Canadian company, GEC ALSTHOM, developed a cold pasteurizing system,

10    which utilizes high hydrostatic pressure for processing thermal-sensitive packaged food products.  According to that company's literature, pressure modifies cell membrane permeability of microorganisms.  As a result, bacteria are inactivated or die. It is recommended that the treated products are kept chilled at 4°C in order to reduce bacteriologic risk.  The process is said to triple shelf life of the products.

15    Other companies in Europe and the United States continue research in the high-pressure food processing area.

High pressure is said to be preferable to heat treatment because high pressure does not destroy many of the substances found in fresh foods, such as vitamins, chlorophyll and aroma substances. As a result, refrigerated shelf life of fruit and vegetable products,

20    as well as high-acid products can be increased from several weeks to several months. Most importantly for the purposes of the present invention, high pressure treatment is

6

believed to increase food safety by reducing bacteria in the processed products, while retaining the products' nutritional value, color, flavor and texture.

The principle of cold isostatic (uniformly applied) pressure processing is relatively simple – food is placed in a container and is surrounded by a pressure medium, usually 5    water. An external pressure intensifier to a pre-determined value pressurizes the vessel. Pressure is fed into the pressure vessel where food products have been deposited. Pressure in such a vessel is distributed evenly through all parts of the product, thereby preventing mechanical damage of delicate food products. The process may be conducted with no or minimal heat treatment.

10    Another problem that the present invention addresses is mechanical shucking of oysters. Seafood processing plants employ skillful workers for the preparation of oysters for packaging in jars and other containers for sale to the customers. Restaurants that serve raw oysters also employ special personnel for shucking oysters before serving the delicacy on a half shell.

15    The process of oyster shucking involves cutting of the connective tissue of oyster adductor muscle that is normally attached to the shell and keeps the shell halves tightly closed. More experienced workers perform this task relatively well, while novices can damage the product and cut through the body of the oyster, thereby reducing the quality and increasing the cost.

20    At present, the applicant is not aware of any commercial utilized method of mechanical shucking of oysters. It is estimated that about 80% of the cost of a shucked

oyster are due to the labor-intensive hand-shucking process.

The present invention contemplates elimination of drawbacks associated with the prior art and reduction or elimination of harmful bacteria in raw shellfish, as well as shucking of oysters without any substantial affect on the sensory qualities of raw

5    shellfish. Additionally, a new method of fabricating the yoke and chamber of high pressure equipment is disclosed.

## SUMMARY OF THE INVENTION

It is, therefore, an object of the present invention to provide a process for reducing or elimination of pathogenic organisms from raw molluscan shellfish, such as oysters,

10   clams, and mussels.

It is another object of the present invention to provide a method of reducing harmful bacteria in raw shellfish without substantially affecting its sensory qualities.

A further object of the present invention is to provide a method of shucking oysters and other shellfish such as clams and mussels that does not involve manual

15   cutting of the oyster muscle.

Still another object of the present invention is to provide an apparatus for high pressure processing of shellfish, such as oysters, clams and mussels.

These and other objects of the present invention are achieved through a provision of a process that includes high-pressure treatment of raw shellfish, the process comprising

20   the step of exposing the shellfish to relatively high hydrostatic pressure.  The process is conducted at ambient temperatures, exposing the molluscan shellfish to the liquid

8

pressure of between 20,000 p.s.i. to 80,000 p.s.i. for 1-15 minutes.

As a result of the high-pressure treatment, pathogenic organisms, such as bacteria Vibrio Vulnificus are destroyed without substantially adversely affecting the sensory qualities of the shellfish. At the same time, the connective tissues of oyster adductor muscle holding the two

5    oyster shell halves is separated from the shells, and the oyster shells open without any manual cutting of the muscle.

## BRIEF DESCRIPTION OF THE DRAWINGS

Reference will now be made to the drawings, wherein like parts are designated by like numerals, and wherein Figure 1 is a schematic side view of high pressure processor

10    for practicing the process of the present invention.

Figure 2 is a top view of the processor shown in Figure 1; and

Figure 3 is detail cross sectional view of the inner liner with top and bottom lids and pressure containing seals.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

15    The new process for the treatment of raw molluscan shellfish according to the present invention will now be described in more detail. According to this process, raw shellfish, such as oysters, clams and mussels are treated in a high-pressure environment with no application of heat, at substantially ambient temperatures.

The non-thermal method of food preservation, high pressure processing, has been

20    known in use in relation to meat product, fruits, and other products. However, no attempts have been known so far to treat such fragile, easily damaged products as raw

9

shellfish. Traditionally, shellfish, such as crab, crawfish and oyster deteriorate in quality immediately upon death. For this reason, they are usually shipped either live, at considerable expense in refrigerated containers, or fresh frozen.

None of these approaches could be applied to insure bacteria-free raw shellfish that would satisfy public demand for raw oysters eaten on a half shell. Bearing in mind the importance of regaining markets and consumer confidence in Gulf oysters, fishermen are looking for feasible methods of processing shellfish without destroying its nutritional and sensory values.

According to the present invention, molluscan shellfish, for example, shellstock oysters, are individually tied with a flexible band, for example a rubber band, and placed in a pressure vessel that contains a pressure transmitting fluid, for example, water. If desired, the shellfish can be prepackaged in pouches and then loaded into the pressure vessel. The vessel is then closed and pressurized to between about 20,000 p.s.i to 50,000 p.s.i. for 1-15 minutes.

During experimental tests, it was observed that the higher the pressure, the less time it takes to destroy bacteria, such as Vibrio Vulnificus in raw oysters. For example, when shellstock oysters were treated at hydrostatic pressure of 50,000 p.s.i. for 5 minutes, seeded bacteria Vibrio Vulnificus was reduced from 24,000 MPN/g to 0 MPN/g (here, MPN stands for Most Probable Number).

During processing, the pressurized liquid remained at ambient temperature while the pressure was transmitted uniformly to the product inside the pressure vessel. The

10

resultant product did not significantly change in volume and no mechanical damage was observed to the delicate food product.

During experimental tests, it was determined that treatment of the product at hydrostatic pressure of 50,000 p.s.i. for 5 minutes achieved the desired result with all of

5    the treated shellfish. It is envisioned, however, that under certain conditions, the shellfish can be treated at even higher or lower pressures. The increase in temperature during the treatment was minimal, about 3°C per 14,500 p.s.i.; it did not depend on the size of the processed product. The temperature decreased as soon as the pressure application was terminated.

10   Some experiments showed that preferred pressures are in the range of 45,000 p.s.i., as pressures lower than 45,000 p.s.i. could lead to reversible denaturing of the treated product, and thereby adversely not achieve the desired results.

It is further envisioned that other types of bacteria, in addition to Vibrio Vulnificus can be eliminated or substantially reduced in raw shellfish with the use of the present

15   invention, therefore increasing the shelf life of a product.

During experiments with raw oysters, an unexpected phenomenon was observed – the oyster adductor muscle connective tissue attachment at the shell denatured to gel formation at pressure as low as 20,000 p.s.i. and treatment time of 15 minutes. First, it was observed that a gap developed between the shell halves. When the shell halves were

20   pried open, the oyster easily slid out of the shell in perfect condition. No mechanical cutting was necessary. The denaturing of muscle proteins, including actin and myosin and

11

connective tissues to a gelatin transition is a result of disruption of non-covalent interactions in tertiary protein structures. The potential commercial utilization of this chemical denaturing for mechanical shucking of live shell stock oysters has not been previously tested or observed.

5          To prevent escape of water or "bleeding" of oysters during the high pressure treatment, oysters need to be mechanically banded, for example with a flexible band, such as a rubber band, before placement in the processing vessel. The band keeps the shell halves tightly closed, thereby helping in preservation of natural condition of raw oysters that can be later served on a half shell. The processed oysters can be shipped to
10       customers with the bands attached, and the consumer will then only need to remove the band to open the oysters. Oysters that will be immediately shucked do not need to be banded.

Turning now to the drawings in more detail, numeral 10 designates a high-pressure processor used in the present invention. The processor 10 comprises an enclosure 12
15       made of steel or stainless steel.  The enclosure 12 has a bottom plate 14 and four vertical sidewalls (only two opposing sidewalls 16 and 18 are shown in Figure 1).

The enclosure 12 can be mounted in a cavity 20 formed below a floor level 22. Concrete walls reinforced with rebars, if necessary can define the cavity 20. The walls and floor defining the cavity 20 may be 12" or more in thickness. At the least a lower
20       portion of the enclosure 12 is housed within the cavity 20.

A first pressure vessel 30 is secured on the wall 16 of the enclosure 12 by

attachment brackets 32. The brackets 32 are vertically spaced from each other and can be three or more in number. The vessel 30 has vertical walls 34a, 34b, 34c, and 34d (see Figure 2), a bottom lid 36 and a top lid 38 with four vertical corner bars 39 (Figure 2).

A continuous cylindrical liner 40 is mounted inside the vessel 30, the liner 40 extending from a level adjacent the bottom lid 36 to the upper edge of the vessel 30. The liner 40 defines a pressure chamber 42 inside the vessel 30. Horizontal slabs 44 surround the vertical liner 40, and a safety plate 46 is secured on the exterior of the vessel 30, extending along the wall 34b, as can be better seen in Figure 2. The slabs 44 can be made of high tensile steel or other high-tensile material to help contain the high pressure created in the chamber 42. The top lid 38 and the bottom lid 36 have central portions, 37 and 35, respectively, that extend into the cylindrical liner 40, as can be better seen in Figure 3.  Pressure containing seals 39 are positioned in a circumferential relationship about the portions 35 and 37 between the liner 40 and the central portions 35, 37.

A second pressure vessel 50 is securely attached on the opposite wall 18. The second pressure vessel 50 is similar to the first pressure vessel 30 in all respects, as it comprises a cylindrical inner liner 52 surrounded by a high-tensile "envelope" 54 placed in the vessel 50. The envelope 54, similar to the slabs 44 can be made of a plurality of smaller high tensile steel slabs. A plurality of attachment brackets 56 secures the vessel 50 on the wall 18. A top lid 58 covers the open top of the vessel 50 and a bottom lid 59 covers the bottom of the vessel 50. The top lid 58 and the bottom lid 59 have central portions, similar to portions 35, 37 of the vessel 30, that extend into the liner 52 where

13

the pressure containing seals 39 are located.

Each bottom lid 36 and 59 is provided with inlet/outlet opening to allow pressure medium fluid to move in and out of the pressure chamber 42 and 51. As can be seen in Figure 3, the central portion 35 of the lid 36 has a central fluid channel 80 that extends to

5     about midway of the lid 36.

A second channel 82 fluidly communicates with the first channel 80 to allow egress and ingress of pressure fluid. The second channel 82 is formed at about a right angle to the first channel 80 extending from the center of the lid 36 in a parallel relationship to the general plane of the lid 36 and in a transverse relationship to a vertical

10    axis of the liner 40. The channels 80 and 82 connect the interior of the pressure chamber 42 with an exterior thereof. The lid 59 of the pressure vessel 50 is provided with an identical inlet/outlet port connecting the pressure chamber 51 with an exterior thereof.

Extending between the opposing walls 16 and 18 is a pair of rails 60, 62. A pressure holding and safety yoke 64 slides on the rails between the first pressure vessel

15    30 and the second pressure vessel 50. The yoke 64 is mounted on wheels 66, which are secured at bottom corners of the yoke frame. A bottom plate 68 is secured above a bottom part 67 of the yoke 64, and a top plate 70 is secured below a top part 71 of the yoke 64. The space between the upper plate 70 and the bottom plate 68 is large enough to accommodate the pressure vessel 30 or 50. The purpose of the bottom plate 68 and the

20    top plate 70 is to provide extra strength to the yoke 64.

The yoke 64 further comprises two vertical walls 74 and 76 secured in parallel

relationship between the upper part 71 and the bottom part 67 of the yoke 64. As a result, a rectangular frame structure is defined by the yoke walls, bottom and upper parts. In use, the yoke 64 surrounds the pressure vessel 30 or 50 on opposite, unprotected walls 34a and 34c and provides extra protection when high pressure is applied. The primary

5    function of the yoke 64 is to hold the lids 58 and 59 of the vessel 50 and the lids 36, 38 of the vessel 30 in place when high pressure is applied.

The top plate 70 covers the lids 38,58, while the bottom plate 68 extends below the bottom lids 36 and 59 of the vessels 30 and 50, respectively. The yoke walls 74 and 76 and the upper part 71 and the bottom part 67 can be formed from a plurality of high

10    tensile slabs secured together by four bolts. A top safety shield 72 provides extra protection during operation.

In operation, raw shellfish, such as an oyster is individually banded to prevent escape of water from the shell when the oyster is removed from the chamber. The oysters are placed in a basket for handing purposes. Oysters can also be placed in flexible bag

15    filled with water prior to being inserted into the pressure chambers of vessels 30 and 50. The pressure chamber is filled with pressure medium, such as water. The basket is then inserted into the pressure chamber of a vessel 30 or 50, and the lids 38, or 58, respectively, are closed. The yoke 64 is rolled toward the loaded vessel and secured in place by a conventional stop to assure positioning during a high-pressure application.

20    An external pressure source is used for supplying pressure to the pressure chamber of the vessel, where the oysters have been deposited. According to Pascal's Law, this

hydrostatic pressure has a uniform effect on all materials inside the pressure vessel. Equally distributed pressure affects the oyster meat inside the shells and eliminates Vibrio Vulnificus bacteria from the oyster meat without any mechanical damage to raw oysters.

5          Oyster meat has a high water content, which makes high-pressure treatment a particularly advantageous type of processing for raw oysters. At the same time, the adductor muscle detaches from the shell, and shell halves are ready to separate, when necessary, for serving oysters on half shelf, or for easy shucking of oysters.

          While the oysters are processed, the pressure in the chambers 42 or 51 is rapidly
10     elevated to between 20, 000 p.s.i. and 50, 000 p.s.i.  The pressure is retained for about one to fifteen minutes, depending on the selected pressure value.  For lower pressures, the time of treatment is greater, while higher pressure requires less treatment time.  The pathogenic microorganisms are eliminated, while nutritional value and sensory qualities of raw oysters are not affected.

15     Experiments conducted with raw oysters demonstrated that Vibrio Vulnificus bacteria were eliminated at every test run with any size oysters when pressure was in the range of 45,000 p.s.i. and treatment time was about 5 minutes. Shucking of oysters occurs at much lower pressures, about 20,000 p.s.i., when oysters are treated for 15 minutes. Therefore, it is envisioned that for processes not requiring bacteria elimination, but only
20     shucking, the vessels 30 and 50 can be run at lower pressures.

          Once the batch in the loaded vessel has been treated for the pre-determined period

16

of time, the yoke 64 is rolled away from that vessel and engaged with the second vessel. While the product is processed in the second vessel 50, the treated product from the first vessel 30 can be unloaded, and a new batch of products deposited therein. The single yoke 64 serves as a pressure holding and safety device for two separate pressure vessels

5    30 and 50.

The method in accordance with the present invention does not cause thermal damage, as the process is conducted at ambient temperatures. At the same time, no mechanical damage to the delicate oyster meat occurs, as the shell protects the oyster from any contact with the mechanical parts of the pressure vessels.

10    The method of the present invention has minimal impact on the environment. Cooling water can be recycled through the use of conventional equipment. Conventional electromechanical systems can be used to generate high pressure inside the pressure vessels 30 and 50.

It is envisioned that various types of molluscan shellfish, such as clams, muscles,

15    abalone, and others can be processed with the method of the present invention without mechanical damage or deterioration of sensory properties of the product. Once the bacteria are eliminated, the product can be shipped for consumption in a raw state. It is believed that the process of the present invention can be implemented for elimination of other bacteria, in addition to Vibrio Vulnificus.

20    The shellfish can be harvested even in warm months, and the public will be assured of the product safety. Naturally contaminated Gulf Coast oysters that can contain

17

thousands of harmful Vibrio Vulnificus bacteria can be successfully processed with the apparatus and method of the present invention.

Other seafood items can be similarly processed with the method and apparatus of the present invention. If desired, oysters and other products to be treated in the system of

5    the present invention can be placed in baskets in a refrigerator/cooler, so as to prevent bacteria multiplication, while the products wait their turn in the pressure vessels. After processing, the shellfish should be placed in a cooler as soon as possible. The processed shellfish should be preferably kept at between 32°F and 36°F until it is sold and consumed by a customer.

10    The external source of pressure can be any conventional pressurizing means, such as hydraulic motor, electrical motor and the like. Other means for building up pressure in the pressure chambers can be successfully employed without affecting the advantages afforded through the practice of the present invention.

Many changes and modifications can be made in the process of this invention

15    without departing from the spirit thereof. I, therefore, pray that my rights to this invention be limited only by the scope of the appended claims.

## 9. APPENDIX

Claims involved in this Appeal:

5.    A post-pressurized raw shellfish that is pressure-shucked and free from pathogenic naturally-occurring marine bacteria and which has undergone treatment by exposing said raw shellfish to pressure of about between 20,000 p.s.i. and 50,000 p.s.i., said raw shellfish retaining sensory characteristics of raw product.

27.    The raw shellfish of Claim 5, wherein said raw shellfish is treated by depositing said raw shellfish into a pressure vessel loaded with a pressure transmitting fluid and pressurizing the vessel for a period of between 1 and 15 minutes to thereby eliminate pathogenic naturally occurring marine bacteria in said raw shellfish.

28.    The raw shellfish of Claim 5, wherein said raw shellfish is retained at a temperature below ambient temperature prior to and following treatment in the pressure vessel.

29.    The raw shellfish of Claim 5, wherein said raw shellfish are oysters and molluscan shellfish.

30.    The raw shellfish of Claim 29, wherein a flexible detachable band is placed over said oysters prior to depositing said oysters in said pressure vessel for retaining bodies of oysters and molluscan shellfish and juices in shells.

31.    The raw shellfish of Claim 5, wherein said raw shellfish is retained in said pressure vessel for a period of time sufficient to eliminate *Vibrio Vulnificus* bacteria in said raw shellfish.

32.    A post-pressurized raw shellfish that is pressure-shucked and free from pathogenic naturally-occurring marine bacteria and which has undergone treatment for elimination of pathogenic naturally-occurring marine bacteria by depositing said raw shellfish into a pressure vessel loaded with a pressure transmitting fluid and pressurizing the vessel to between about 20,000 p.s.i. and about 50,000 p.s.i. for a period of 1 to 15 minutes, thereby eliminating pathogenic bacteria in said raw shellfish, while retaining sensory characteristics if said raw shellfish, and then retaining said raw shellfish at a predetermined temperature below ambient.

33.    The raw shellfish of Claim 32, wherein said raw shellfish is retained in said pressure vessel for a period of time sufficient to eliminate *Vibrio Vulnificus* bacteria in said raw shellfish.

34.    A post-pressurized raw shellfish, which is pressure-shucked and is substantially free from pathogenic naturally-occurring marine bacteria and which has undergone pressure treatment to eliminate the pathogenic naturally-occurring marine bacteria and shuck said raw shellfish, said raw shellfish retaining sensory characteristics of raw shellfish by depositing said raw shellfish into a pressure vessel loaded with a pressure transmitting fluid and pressurizing the vessel to between 20,000 p.s.i. and 50,000 p.s.i. for a period of 1 to 15 minutes.

35.    The raw shellfish of Claim 34, wherein said raw shellfish is shucked by causing release of an adductor muscle of said raw shellfish.

36.    A post-pressurized pressure-shucked and bacteria-free raw shellfish product having sensory characteristics of a raw product that has been pressurized for a predetermined period of time to a predetermined pressure value above atmospheric pressure.

37.    The raw shellfish product of Claim 36, wherein said predetermined period of time is between about 1 minute and 15 minutes.

38.    The raw shellfish product of Claim 36, wherein said predetermined pressure value is between about 20,000 p.s.i. and about 50,000 p.s.i.

## ABSTRACT OF THE DISCLOSURE

The invention relates to a process for eliminating pathogenic organisms from raw food products, such as raw shellfish, whereby the molluscan shellfish is exposed to hydrostatic pressure of relatively high value, for example between 20,000 p.s.i. to 50,000 p.s.i. for 1-15 minutes.  The process is conducted at ambient temperatures, leaving the raw shellfish substantially unaffected, in its desired raw state, such that the pathogenic organisms are destroyed, while sensory characteristics of the raw shellfish remain high. The same process can be used for shucking oysters without any mechanical force. A high pressure processor for elimination of bacteria in raw food products is disclosed.



FIG. 1



Figure 3



F I G . 2

US005773064A

# United States Patent [19]

Tesvich et al.

[11] Patent Number: 5,773,064

[45] Date of Patent: *Jun. 30, 1998

[54] **HEAT TREATMENT OF RAW MOLLUSCAN SHELLFISH INCLUDING A BANDING PROCESS**

[76] Inventors: **John Tesvich**, Rte. 1 Box 459-E, Buras, La. 70041; **John Schegan**, 12110 E. Slauson, Ste. 15, Santa Fe Springs, Calif. 90670; **Patrick Fahey**, 1200 Harmony St., New Orleans, La. 90015

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,679,392.

[21] Appl. No.: **620,155**

[22] Filed: **Mar. 22, 1996**

[51] Int. Cl.[6] .......................... **A23B 4/005; A22C 29/04**

[52] U.S. Cl. .......................... 426/420; 426/521; 426/383; 426/132; 426/643

[58] Field of Search ................................. 426/129, 412, 426/643, 132, 420, 521, 383

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 568,482 | 9/1896 | Hirst . | |
| 2,842,443 | 7/1958 | Rice et al. | 426/132 |
| 3,331,105 | 7/1967 | Gordon | 426/132 |
| 3,418,138 | 12/1968 | Dennis et al. . | |
| 3,436,231 | 4/1969 | Bruce et al. | 426/132 |
| 3,615,726 | 10/1971 | McMillan | 426/241 |
| 3,641,982 | 2/1972 | Woodridge et al. | 119/4 |
| 3,658,559 | 4/1972 | Mohwinkel | 426/412 |
| 4,164,590 | 8/1979 | Mencacci | 426/412 |
| 4,537,149 | 8/1985 | Ryan | 119/4 |
| 4,659,574 | 4/1987 | Carlsson et al. | 426/68 |
| 5,186,121 | 2/1993 | Smith, Jr. | 119/4 |
| 5,281,426 | 1/1994 | Pardo | 426/412 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1100353 | 5/1981 | Canada | 426/412 |
| 242183 | 10/1987 | European Pat. Off. | 426/412 |
| 59/132852 | 7/1984 | Japan . | |
| 60/49770 | 3/1985 | Japan | 426/129 |
| 2/177851 | 7/1990 | Japan . | |

OTHER PUBLICATIONS

J. of Food Protection vol. 55, Dec. 1992, pp. 985–989.
J. of Food Sci. 56(5), 1991 pp. 1292–1294 (Dialog Abstract) & Full Text.
J. Food Sci. 49(2), 1984 pp. 331–333 (Dialog Abstract) & Full Text.
J. Food Sci. 53(2), 1988 pp. 325–327, 348 (Dialog Abstract) & Full Text.
Commerce News, Nat'l Oceanic & Atm. Admin. 1979, Sen 85 4 pp. (Dialog Abstract).
Food Engineering Nov. 1979, p. 176 (Dialog Abstract) & Full Text.
J. of Food Science 55(2) pp. 372, 373, 429, 1990 (Dialog Abstract).
Alimentos, 1–2/1994 v.19(1) 5–17 (Dialog Abstract).
Southeast Asian Fisheries Development Center 1985 p. 26 (Dialog Abstract).

(List continued on next page.)

*Primary Examiner*—Steven Weinstein
*Attorney, Agent, or Firm*—Tom Hamill, Jr.

[57] **ABSTRACT**

A method of preparing raw molluscan shellfish meat in the shell is disclosed which employs a mild heat treatment and cold storage for the destruction or reduction to lower levels of harmful pathogenic bacteria such as Vibrio vulnificus, Vibrio cholerae and others. The raw molluscan shellfish, such as oysters, arrives at the processing plant in a refrigerated state. The mollusks then have a band placed around them, securing them against opening. The banded mollusks are then placed in a fluid bath at a sufficient temperature and duration to kill pathogens yet leave the meat in a raw state. The mollusks are then conveyed from the heated fluid bath and placed in a cold fluid bath. The mollusks are then removed from the cold fluid bath. The natural enclosure of the mechanically banded mollusk prevents the hot or cold fluids from contacting the flesh of the mollusk. The mollusks remain in a raw state in the shell throughout the process. The pathogenic bacteria are reduced through the action of this process. Also disclosed is a banded mollusk product, suitable for human consumption with minimal preparation.

3 Claims, 2 Drawing Sheets



EXHIBIT
2

**5,773,064**
Page 2

OTHER PUBLICATIONS

J. of Food Protection, 1986, 49(11) pp. 877–879 (Dialog Abstract).

Developments in Industrial Microbiology 1983, 24, pp. 457–465 (Dialog Abstract) & Full Text.

Food Industries of S. Africa 1979, Nov., 31 (Dialog Abstract) & Full Text.
Paper, Film & Foil Converter 1990, 64(6) pp. 142–144 (Dialog Abstract).
Report of Toyo Junior College of Food Technology & Toyo Institute of Food Technology 1974, No. 11, 73–79 (Dialog Abstract).



FIG 1

5,773,064

**1**

## HEAT TREATMENT OF RAW MOLLUSCAN SHELLFISH INCLUDING A BANDING PROCESS

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates generally to heat treatment of raw molluscan shellfish, and more particularly, to a heat treatment and cold storage process to be employed with such mollusks, such as oysters, (Genus: Ostrea) especially adapted to effect reduction of harmful bacteria, including *Vibrio cholerae*, *Vibrio vulnificus* and *Vibrio parahaemolyticus*. This process may be effective against a variety of other pathogenic producing bacteria and as such would be extremely useful in the shellfish industry. This process will place a band about the shellfish in order to prevent the shell from opening during the mild heat treatment described herein, as well as throughout its transport to the end user.

#### 2. Description of the Prior Art

While seafood are generally considered healthy and safe to consume, concerns about the safety of eating raw molluscan shellfish such as oysters are widespread. Bacteria, such as the autochthonous estuarine bacterium Vibrio vulnificus, the deadly *Vibrio cholerae* and *Vibrio parahaemolyticus* may be transferred from the marine environment to the molluscan shellfish. These bacteria have been shown to cause primary septicemia, gastroenteritis, diarrhea, nausea, vomiting, tenesmus, fever, dehydration and death in humans. Septicemia generally leads to secondary cutaneous lesions and necrotic ulcers of the extremities, and approximately sixty percent of all known cases result in fatalities. Other bacteria may also be pathogenic and may be introduced to the human through consumption of raw molluscan shellfish meat. The Vibrio bacterium is located in oysters and as such raises public health concerns. This method will be utilized to reduce these and other pathogenic organisms to permit the harvesting of oysters during the warmer months and in warmer waters, especially in the southern United States, where it has been proposed by the Food and Drug Administration to suspend the harvesting of oysters during the summer months as a health precaution. It is also noted that these disease causing bacteria are endemic in Asia and the Pacific.

The consumption of raw molluscan shellfish meat is widespread, and it is desirable to permit its continued consumption without endangering the health of the consumer. No current commercial methods employed permit the mollusk to be heat treated and remain in the raw, uncooked state. Very few effective means of treating oysters meant for raw consumption currently exists.

Some methods for the preservation and sterilization of crustacean shellfish are known in the art, but these are directed to the canning of the product as well as to increasing the products shelf life in a commercial market. For example, U.S. Pat. No. 5,268,189 issued to Doerter discloses a process which employs a thermally conductive mixture which forms a liquid barrier upon heating and a gel upon cooling. The process is utilized in the packaging of crustacean shellfish (crabs, lobsters, crawfish, shrimp) in container for packaging, and further placement on a shelf at a distribution point. The method employs specific heating and cooling steps which are of high temperature and long duration which destroys harmful bacteria during the packaging (canning) of the crustacean meat. The invention seems to be concerned primarily with shrimp, crabs, and lobster and spoilage bacteria associated with the canning of those items.

**2**

Other methods lend themselves to the securing of the shellfish shell itself. U.S. Pat. No. 568,482 issued to Hirst shows a pin securing the two halves of an oyster shell together near the point furthest from the hinge of the shell in order to preserve the oyster's liquor. The pin is placed in the shell after the shell has been perforated. Hirst does not teach or disclose a band or a heat treatment process.

Thus, while the foregoing prior art indicates it to be well known to use heating and cooling to destroy unwelcome microorganisms during packaging, to increase shelf life, the temperatures employed are sufficiently high and of sufficient duration to actually cook the meat. The provision of a simple and cost effective method to safely destroy the harmful pathogenic bacteria through the use of mild heat treatment and cool storage which leaves the mollusk (oyster, clam, other mollusks) meat in a raw state is not contemplated. Nor does the prior art described above appear to teach or suggest a method which treats the raw molluscan shellfish in the shell. The final product brought to the consumer will still be in its shell. This is desirable, as a favorite consumer food is a mollusk on the halfshell. This process will permit the consumer to still consume his mollusk on the halfshell, in a raw state, with the harmful bacteria destroyed through the novel process of the instant invention. No prior art appears to teach the placement of a band about the mollusk to secure the shell halves in a closed position. This novel means for securing shellfish has many advantages. Other advantages of the present invention over the prior art also will be rendered evident.

### SUMMARY OF THE INVENTION

To achieve the foregoing and other advantages, the present invention, briefly described, provides a method of preparing raw molluscan shellfish meat in the shell which employs a mild heat treatment and cold storage for the reduction to lower levels of harmful pathogenic bacteria such as enumerated above. The raw molluscan shellfish, including, but not limited to oysters, arrives at the processing plant in a refrigerated state. The product is then culled, cleaned and graded into categories according the product size. The product is then banded across its perimeter using synthetic rubber, plastic or metal banding elements to keep the mollusk shut. This banding process may be performed by an automatic banding machine. The banded product is then placed on a rack, or other conveyance, which is then lowered into a circulating bath of water at a sufficient temperature and duration to kill the pathogens yet leave the meat in a raw state. The rack may be conveyed through a multi-temperature heat treatment vessel which would treat the mollusks for different durations at different preferred temperatures. The rack is then removed from the heated water bath and placed in a cold water bath with a continuous flow for a time period. The rack is removed from the cold water bath. The still banded product is then packed for storage and transport. The packed product is placed in refrigerated storage until shipped to the customer in a refrigerated transport.

It is to be understood that other equivalent heating methods have been contemplated to reduce the bacteria located in the mollusks and may be employed in this process. These include, but are not limited to, convection heating in an oven, steam heating and microwave heating. In the same manner, other equivalent cooling methods have been contemplated as well. These include, but are not limited to, ice, refrigerated air, and other known conventional cooling means.

The mollusk remains in a raw state and in-shell throughout the process. The pathogenic bacteria may be reduced to



5,773,064

| 3 | 4 |

an undetectable level by this process. This process retains the natural flavor of the molluscan meat, as well as the raw state and texture associated with "raw bar" style mollusk prepared for consumption.

To serve the mollusk one removes the band and removes the shell per the known "raw bar" style mollusk preparation method. The above description is merely indicative of one possible embodiment of a heat treatment method possible utilizing the banded mollusks.

The terms mollusk and raw molluscan shellfish are utilized to primarily cover the class of marine organisms located within a shell. This includes bivalves, oysters, clams, as well as other such organisms.

A shellfish product where the mollusk is banded is also disclosed. Irrelevant of centralized heat treatment, such a product may be sold to consumers. The band may include advertising indicia. The final step prior to consumption would be removal of the securing band.

The above brief description sets forth rather broadly the more important features of the present invention in order that the detailed description thereof that follows may be better understood, and in order that the present contributions to the art may be better appreciated. There are, of course, additional features of the invention that will be described hereinafter and which will form the subject matter of the claims appended hereto.

In this respect, before explaining at least the preferred embodiments of the invention in detail, it is to be understood that the invention is not limited in its application to the details of the construction and to the arrangements of the components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments and of being practiced and carried out in various ways. Also, it is to be understood, that the phraseology and terminology employed herein are for the purpose of description and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily be utilized as a basis for designing other structures, methods, and systems for carrying out the several purposes of the present invention. It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish which reduces harmful pathogenic bacteria, such as Vibrio cholerae, Vibrio vulnificus, and Vibrio parahaemolyticus to undetectable levels, and lower total bacteria plate counts.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish which provides a mild heat treatment and the cold storage of the mollusk.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish which takes place with the mollusk remaining in the shell throughout the process, permitting harmful bacteria and other organisms to be destroyed while bringing the product to the consumer in shell.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish which brings the mollusk to the consumer in a raw, uncooked state, which permits the mollusk to be prepared on the halfshell.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish in the shell which includes a band secured about the mollusk for the purpose of preventing the opening of the mollusk during heat treatment, thereby preventing contamination and product degradation.

It is therefore an object of the present invention to provide a process for the preparation of raw molluscan shellfish which may be easily and efficiently performed.

An even further object of the present invention is to provide a new and improved process for the preparation of raw molluscan shellfish which is susceptible to a low processing cost with regard to both materials and labor, and which accordingly is then susceptible to placing the processed product at a low price of sale to the consuming public, thereby making such a mollusk product available to the buying public.

These together with still other objects of the invention, along with the various features of novelty which characterize the invention, are pointed out with particularity in the claims annexed to and forming a part of this disclosure. For a better understanding of the invention, its operating advantages and the specific objects attained by its uses, reference should be had to the accompanying drawings and descriptive matter in which there are illustrated preferred embodiments of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be better understood and the above objects as well as objects other than those set forth above will become more apparent after a study of the following detailed description thereof. Such description makes reference to the annexed drawings wherein:

FIG. 1 is a block diagram in flowchart form showing the various steps of the process for the preparation of raw molluscan shellfish which would reduce the pathogenic bacteria.

FIG. 2 is a top view showing a oyster which has been banded.

FIG. 3 is a view of an elastic band member which will be placed around the mollusk.

FIG. 4 is a view of a wrap around band member.

DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings, a new and improved process for the preparation of raw molluscan shellfish embodying the principles and concepts of the present invention will be described.

Turning initially to FIG. 1, there is shown a first exemplary embodiment of the process for the preparation of raw molluscan shellfish of the invention generally designated by reference numeral 10. In its preferred form, the raw molluscan preparation process 10 comprises generally several steps. The first step will be the capture step 12. The molluscan shellfish will be captured in their indigenous environment by traditional mollusk harvesting techniques. These mollusk live with the autochthonous estuarine bacterium Vibrio vulnificus, as well as other pathogenic bacterium, including Vibrio cholerae. It is not possible to determine from the outward appearance of the mollusk whether or not it is contaminated with any of the harmful bacterium; hence it may be appropriate to treat all harvested mollusks.

The mollusk are then transported by conventional means to the processing plant. The first step will be the arrival step 14. During this step the mollusk arrives at the processing plant. The mollusk are immediately placed in a refrigerated

5,773,064

| 5 | 6 |

state, optimally between the temperatures of 34 to 40 degrees fahrenheit. This maintains the mollusk in a living state, above freezing, with minimal degradation.

The second step will be the separation step 16. During the separation step, the mollusk is culled, removing large external debris. The mollusk is also cleaned during the separation step, removing mud, dirt and other fine debris from the mollusk. This may be accomplished by a variety of means including water spray. The debris, dirt and mud will be disposed of, with the used water by any suitable conventional method. During the separation step 14 the product is also separated into grades according to size, and then placed on conveyors feeding to the banding machines.

The third step is the banding step 18. In order to keep the mollusk in a closed state during the upcoming heat treatment, the mollusk is banded about its perimeter using synthetic rubber, plastic or metal bands during the banding step 18. The banding will be accomplished by automatic banding machines which are commercially available. It is to be understood that modifications may be made to the banding machines to accommodate the unique shapes of the molluscan shellfish. The banding material may be elastic, a heat shrinkable material or any other known banding material. The band will be chosen in order to supply sufficient binding force to keep the mollusk's shell closed during the entire heat treatment, processing, and packaging stages. Another factor in the choice of banding material will be general strength. Mollusk edges are sharp and the banding material must be resistant to tearing or loosening by the action of other similarly handling mollusks. The band may also be designed to be "tamper-evident". The band about the mollusk will not interfere with thermal conductivity during the upcoming mild heat treatment 20 and cool down steps 22. The banded mollusks are transported to the mild heat treatment step 20. This transport may be a conveyer or other equivalent means.

The fourth step in the process is the mild heat treatment step 20. The banded mollusks may be placed on a rack or other suitable device. Whether on a rack or otherwise, the mollusks are placed in the heat treatment container. Within the container is fluid, preferably a circulating bath of purified water with other trace components. The temperature of the fluid bath is preferably between about 110–140 degrees fahrenheit. The mild heat treatment process step may last between 10 to 120 minutes depending on the grade size being treated as well as the temperature of the warm fluid bath selected. A marginally cooler or hotter fluid bath may be employed with an appropriately adjusted time period. The increased/decreased possible range of the fluid bath is (±) 10 degrees fahrenheit. The temperature of the fluid bath and immersion time period is selected as to not cook the mollusk. Therefore, the mollusk remains in a raw state. Due to the fact that the mollusk is banded, it remains closed in the fluid bath which prevents contamination of the mollusk as well as retains its natural fluids or liquor. This has the added effect of treating the mollusk in their own natural liquor.

The fifth step in the process is the cool down step 22. The racks, if employed, are removed from the hot fluid bath and the product is then placed in a cold fluid bath. The cold fluid bath will cool the mollusks to less than about 45 degrees fahrenheit during the cool down step and the temperature may be selected to be any temperature desired below 45 degrees fahrenheit for optimum results. The cold fluid bath is preferably between the temperatures of about 28–36 degrees fahrenheit and is preferably of a continuous flow variety, that is, the fluid continuously flows about the product due to the action of an impeller or pump. This tempera-

ture range is preferred, but those skilled in the art will recognize that other temperatures (either higher or lower) will also serve to cool the mollusks. The banded mollusks are cooled in the cool water for about 15 to 20 minutes depending on which grade (size and weight) of product is being treated. The cooling time may be increased or decreased, depending on the temperature of the cooling bath.

The sixth step in the process is the storage step 24. During this step the individual mollusks (e.g. oysters) may be placed into master cases in specified numbers as required and are then placed under refrigeration. The refrigeration is preferably between 32–40 degrees fahrenheit until shipped to the consumer in refrigerated transport. This temperature, of course, may also be varied to meet different conditions.

The seventh and final step of the process is the consumer step 26. During this step, the consumer enjoys a raw molluscan shellfish which retains its natural flavor and raw texture.

It is apparent from the above that the present invention accomplishes all of the objectives set forth by providing a new and improved process for the preparation of raw molluscan shellfish which reduces harmful pathogenic bacteria, such as the pathogenic Vibrio bacteria heretofore described, preferably to undetectable levels. The process provides a mild heat treatment and the cold storage of the mollusk and which takes place with the mollusk remaining in its natural raw state throughout the process. This allows reduction of harmful bacteria while bringing the product to the consumer in shell, in a raw, uncooked state, which permits the mollusk to be prepared on the halfshell, or by other known preparation methods.

By employing the aforementioned process, one reduces or even destroys the harmful bacteria, yet leaves the mollusk in a raw state, still in the shell, which is viable for commercial consumption.

Referring now specifically to FIG. 2, an oyster 50 is shown with a band 52 secured about the two halves of its shell. An oyster 50 is a representative mollusk. Nevertheless, this process and product may be formed and utilized with any mollusk. The band 52 may be elastic, plastic, metal, heat shrinkable material, or any other suitable material, and may be applied about the mollusk by a conventional banding machine. An elastic or rubber band appears to be more adaptable for the instant process, as such a band can accommodate the variation in mollusk size most efficiently. The band must be chosen in order to exert sufficient force to keep the mollusk completely closed during the mild heat treatment process.

The band may be designed to be "tamper-evident".

Referring specifically now to FIG. 3, an elastic band member 54 is shown. Band member 54 has an outer side 56 and an inner side 58. The outer side 56 is designed to receive indicia 60. This indicia 60 may reflect the processing plant where the mollusks are heat treated or may reflect other advertising, logos, etc.

FIG. 4 shows another band configuration. Band 62 is a plastic band which may be heat welded about the oyster. This band 62 may also receive indicia 64. It is to be understood that any of a variety of bands may be employed. A heat shrink band, twist tie style band and metal bands are but a few of the possible bands which may be employed in the invention.

With respect to the above description, it should be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use,

5,773,064

7

are deemed readily apparent and obvious to those skilled in the art, and therefore, all relationships equivalent to those illustrated in the drawings and described in the specification are intended to be encompassed only by the scope of appended claims.

While the present invention has been shown in the drawings and fully described above with particularity and detail in connection with what is presently deemed to be the most practical and preferred embodiment of the invention, it will be apparent to those of ordinary skill in the art that many modifications thereof may be made without departing from the principles and concepts set forth herein. Hence, the proper scope of the present invention should be determined only by the broadest interpretation of the appended claims so as to encompass all such modifications and equivalents.

What is claimed as being new and desired to be protected by Letters Patent of the United States is as follows:

1. A process for the treatment of unshucked, raw molluscan shellfish where the shellfish remain in their natural shell throughout the process, including the steps of:

   a) banding the unshucked raw molluscan shellfish by placing a band about the perimeter of their shell,

   b) heat treating the banded, raw molluscan shellfish by placing the banded shellfish in a fluid bath at a temperature of about 110 to 140 degrees Fahrenheit (43.33

8

to 60 degrees Centigrade) for 10 to 45 minutes, said heat treating being at a temperature and for a time sufficient to destroy harmful pathogenic bacteria including vibrio vulnificus, yet leave the shellfish in a raw state,

   d) cooling the heat treated, banded, unshucked, raw molluscan shellfish by placing the banded shellfish in a fluid bath at a temperature of about 28–45 degrees Fahrenheit for 15 to 20 minutes, said band maintaining said unshucked raw molluscan shellfish closed during said heat treating and cooling steps sufficient to prevent contamination of the unshucked raw molluscan shellfish and to retain its natural fluids,

   e) removing said band from about the shell of the cooled, unshucked, raw molluscan shellfish,

   e) shucking the cooled, raw molluscan shellfish, and

   f) serving the shucked, cooled, raw molluscan shellfish on the half shell.

2. A process as claimed in claim 1 wherein said band is selected from the group consisting of metal bands, elastic bands and plastic heat shrink bands.

3. A process as claimed in claim 1 wherein said band has a first surface, said first surface including indicia.

* * * * *

The opinion in support of the decision being entered
today was *not* written for publication and is *not* binding
precedent of the Board

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* ERNEST A. VOISIN

Appeal No. 2005-1558
Application 09/949,704



HEARD: January 26, 2006

Before OWENS, WALTZ, and FRANKLIN, *Administrative Patent Judges.*

WALTZ, *Administrative Patent Judge.*

## DECISION ON APPEAL

This is a decision on an appeal from the primary examiner's
final rejection of claims 5 and 27 through 38, which are all of
the claims pending in this application.  We have jurisdiction
pursuant to 35 U.S.C. § 134.

According to appellant, the invention is directed to a
post-pressurized bacteria-free raw shellfish (e.g., oysters) that
has been subjected to high pressure in the range of 20,000 to

EXHIBIT
3

Appeal No. 2005-1558
Application No. 09/949,704

50,000 p.s.i. to render the product substantially free from
pathogenic naturally-occurring marine bacteria while the sensory
characteristics of raw shellfish are retained (Brief, unnumbered
page 2).[1]  Appellants states that every claim is believed to be
"separately patentable" (Brief, unnumbered pages 3-4).  However,
appellant merely recites the limitations of each claim and states
that the "cited prior art fails to disclose" these limitations.
Without more specificity, we determine that appellant has not
complied with 37 CFR § 1.192(c)(7)(2003)("[m]erely pointing out
differences in what the claims cover is not an argument as to why
the claims are separately patentable"), and thus the claims stand
or fall together.  Accordingly, we select claim 5 from the
grouping of claims and decide the ground of rejection in this
appeal on the basis of this claim alone.  *See In re McDaniel,*
293 F.3d 1379, 1382-83, 63 USPQ2d 1462, 1464 (Fed. Cir. 2002).
Representative independent claim 5 is reproduced below:

> A post-pressurized raw shellfish that is pressure-
> shucked and free from pathogenic naturally-occurring marine
> bacteria and which has undergone treatment by exposing said
> raw shellfish to pressure of about between 20,000 p.s.i. and
> 50,000 p.s.i, said raw shellfish retaining sensory
> characteristic of raw product.

_____

[1]We refer to and cite from the Substitute Brief dated June
13, 2003.

2

Appeal No. 2005-1558
Application No. 09/949,704

The examiner has relied on Tesvich et al. (Tesvich '064),
U.S. Patent No. 5,773,064, issued on June 30, 1998, as the sole
evidence of unpatentability.  Appellant has relied on Tesvich et
al. (Tesvich '601), U.S. Patent No. 5,976,601, issued on Nov. 2,
1999, as evidence for patentability (Brief, page 10; Exhibit 5).
Claims 5 and 27-38 stand rejected under 35 U.S.C. § 102(e) as
anticipated by Tesvich '064 (Answer, page 3).

The examiner's rejection on appeal essentially for the reasons stated
in the Answer, as well as those reasons set forth below.

        Based on the totality of the record, we *affirm* the

### OPINION

The examiner finds that Tesvich discloses a raw shellfish
product free of pathogenic bacteria, including *Vibrio vulnificus*
bacteria, where the shellfish is an oyster with a flexible band
closing its shell kept at a refrigerated temperature, and is
presented to the consumer in its shucked state (Answer, page 4).
The examiner notes that the claims are recited in
product-by-process format and that patentability is determined
based on the product itself, not the method of producing the
product (*id.*).  Therefore the examiner finds reasonable belief
that the product of Tesvich '064 is the same as the claimed

3

Appeal No. 2005-1558
Application No. 09/949,704

product (*id.*).

Appellant agrees with the examiner that the claims on appeal

are written in the product-by-process format (Brief, unnumbered

page 6; Answer, page 4). Appellant also agrees that, with such a

claimed format, it is the patentability of the product which must

be determined, not the process of making the product (*id.; see*

*In re Hirao,* 535 F.2d 67, 69, 190 USPQ 15, 17 (CCPA 1976); *and*

*In re Wertheim,* 541 F.2d 257, 271, 191 USPQ 90, 103 (CCPA 1976)).

As held by a predecessor of our reviewing court:

> ... the lack of physical description in a product-by-
> process claim makes determination of the patentability
> of the claim more difficult, since in spite of the fact
> that the claim may recite only process limitations, it
> is the patentability of the *product* claimed and *not* of
> the recited process steps which must be established.
> We are therefore of the opinion that when the prior art
> discloses a product which reasonably appears to be
> either identical with or only slightly different than a
> product claimed in a product-by-process claim, a
> rejection based alternatively on either section 102 or
> section 103 of the statute is eminently fair and
> acceptable. As a practical matter, the Patent Office
> is not equipped to manufacture products by the myriad
> of processes put before it and then obtain prior art
> products and make physical comparisons therewith.
> *In re Brown,* 459 F.2d 531, 535, 173 USPQ 685, 688 (CCPA
> 1972), emphasis in original.

In *Brown,* the court was in effect saying that the Patent Office

bears a lesser burden of proof making out a case of prima facie

unpatentability for product-by-process claims because of their

peculiar nature than would be the case when a product is claimed

Appeal No. 2005-1558
Application No. 09/949,704

in the more conventional fashion.  *See In re Fessmann,* 489 F.2d

742, 744, 180 USPQ 324, 326 (CCPA 1974).

We agree with the examiner that the product of Tesvich '064

reasonably appears to be identical to the product recited in

claim 5 on appeal.  The raw shellfish of claim 5 on appeal is (1)

post-pressurized and pressure shucked; (2) free from pathogenic

naturally-occurring marine bacteria; and (3) retains the sensory

characteristics of raw product (see claim 5 on appeal as

reproduced above).  Tesvich '064 discloses raw shellfish which

has been (1) shucked (col. 3, ll. 5-7 and 61-65); (2) is free of

harmful pathogenic bacteria (reduced to undetectable levels; col.

2, l. 65-col. 3, l. 1; col. 3, ll. 45-49; and col. 6, ll. 19-24);

and (3) retains its natural fluids or liquor, thus retaining its

natural flavor and raw texture (col. 3, ll. 1-4; col. 5, ll.

52-55; and col. 6, ll. 15-18).  Thus the only difference between

the claimed raw shellfish and the product of Tesvich '064 is that

the claimed product has been post-pressurized and pressure-

shucked while the product of Tesvich '064 has been shucked

conventionally, i.e., mechanically or manually shucked.  For

reasons discussed below, we find no probative evidence that the

manually or mechanically shucked product of Tesvich '064 differs

from the pressure-shucked claimed product.

Appeal No. 2005-1558
Application No. 09/949,704

    Appellant argues that the cited reference does not disclose
a bacteria-free product, as evidenced by later admissions of the
same inventors (Tesvich '601)(Brief, unnumbered page 6).
Appellant argues that Tesvich '601 (Exhibit 5) acknowledges that
the heating of oysters in their shells to temperatures above
53 °C. (127.4 °F.) causes edges of the meat to curl and shrink
due to protein degradation, thus "cooking" the oyster (Brief,
unnumbered page 10).  Appellants also argue that Tesvich '601
teaches that the water bath temperature must be between 49 and
55 °C. to kill *Vibrio vulnificus* bacteria (*id.*).  Thus appellants
assert that Tesvich '064 does not disclose a "practical" method
of eliminating bacteria, the product of the '064 patent is
"cooked," and undue experimentation is required to follow the
'064 patent to achieve the claimed result (Brief, unnumbered
pages 10-11).

    These arguments are not persuasive.  Tesvich '064 repeatedly
teaches that the shellfish product should be in a "raw, uncooked
state" (e.g., col. 3, ll. 61-65) and that the parameters of the
process should be chosen so "as to not cook the mollusk ... the
mollusk remains in a raw state" (col. 5, ll. 50-52) while the
pathogenic bacteria are reduced to an undetectable level (col. 2,
ll. 44-46; col. 2, l. 66-col. 3, l. 4).  We determine that it

6

Appeal No. 2005-1558
Application No. 09/949,704

would be only *routine* experimentation for one of ordinary skill
in this art to optimize the immersion time and water bath
temperature, depending on the grade size of the oyster, to
produce the desired uncooked bacteria-free raw oyster product of
Tesvich '064 (see col. 5, ll. 37-56; col. 6, ll. 19-31).  *See*
*In re Hafner,* 410 F.2d 1403, 1405, 161 USPQ 783, 785 (CCPA
1969)(different standards for enablement under section 112 for an
application and a prior art reference); *PPG Indus., Inc. v.*
*Guardian Indus. Corp.,* 75 F.3d 1558, 1564, 37 USPQ2d 1618, 1623
(Fed. Cir. 1996)("The fact that some experimentation is necessary
does not preclude enablement; what is required is that the amount
of experimentation 'must not be unduly extensive' [Citation
omitted]").  We note that Tesvich '064 specifically teaches that
the prior art uses heating and cooling to destroy unwelcome
bacteria but the temperatures and duration employed are
sufficient to cook the meat, while Tesvich desires to produce a
product in the raw state that is bacteria-free (col. 2, ll.
8-23).  Finally, we note that Tesvich '601 merely confirms the
above discussed optimization, teaching that different
temperatures and time durations have been found to give excellent
results, depending on the size of the oysters and the internal
temperature of the oyster meat (col. 1, ll. 51-62; col. 2, ll.

Appeal No. 2005-1558
Application No. 09/949,704

25-42; col. 4, ll. 26-39). If the temperature of the water bath

and duration of the heat treatment were sufficient to "cook" the

oyster meat of selected oysters (Tesvich '601, col. 4, ll.

26-39), one of ordinary skill in this art would not have employed

these conditions in view of the teachings of Tesvich '064

discussed above.

Appellant argues that the claimed terms "post-pressurized"

and "pressure-shucked" are terms describing physical

characteristics of the product (Brief, unnumbered page 11; Reply

Brief, page 4). Appellants further argue that evidence has been

submitted that shows the end product of the claims differs from

the end product of the reference (Brief, unnumbered page 6).

This evidence comprises Exhibits 1 through 4 and Exhibit A,

including the statement of Dr. Kilgen, the letter from Drs. Bell

and Bankston, the studies by Dr. Xu, and the Declarations under

37 CFR § 1.132 by Mr. Nelson and Mr. Sunseri (Brief, unnumbered

pages 7-10; Reply Brief, pages 4-8 including Exhibit A). We do

not find this evidence persuasive for the following reasons.

The Kilgen letter (Exhibit 1) is not probative evidence

since the letter only refers to the processes of "thermal or heat

processing" and "high pressure processing (HPP)" in general, with

no specific statement regarding the specific process as now

8

Appeal No. 2005-1558
Application No. 09/949,704

claimed on appeal versus the specific heat treatment of Tesvich
'064 (see the Answer, page 6).  The conclusions set forth in the
Kilgen letter specifically depend "on the level of heat,"
indicating that new permanent covalent bonds *may* be formed (third
full paragraph, last sentence, emphasis added).  Accordingly,
there is no conclusive evidence in this letter that the oysters
as claimed in claim 5 on appeal differ from those produced by the
process of Tesvich '064.

The letter from Drs. Bell and Bankston (Exhibit 2) has the
same deficiency as discussed above, namely it only refers
generically to oysters produced by "Motivatit's high pressure
process (HPP)" and "Ameripure," but does not specifically
identify the processes used to produce these oysters.  Similarly,
the letter from Dr. Bell and the accompanying study by Dr. Xu
(Exhibit A) do not specify the exact conditions under which the
oysters were produced.  Finally, we note that the Bell-Bankston
letter (Exhibit 2) admits that the final product oyster from
Motivatit and Ameripure are both "*vibrio* free" and only differ in
physical condition "depending on the application of the shucking
knife" (Exhibit 2, third paragraph; see the Answer, page 6).

The Nelson Declaration is not convincing since this
Declaration again does not identify the specific process

9

Appeal No. 2005-1558
Application No. 09/949,704

conditions used to produce the oysters tested (Declaration, page 3). The Declarant further states that the oyster meat's outer membrane is "usually" cut with the Tesvich oyster but does not specify if this was the product actually tasted (Declaration, page 3). Declarant also states that the Tesvich process is "very difficult" to control and results in "over cooking" the less dense oysters with attendant curling and shrinkage of the meat (Declaration, page 2). However, as correctly noted by the examiner (Answer, page 7) and discussed above, the Tesvich '064 process results in control of temperature and duration of immersion, depending on oyster size, to not cook the oyster meat. Declarant specifically states that the Tesvich process involves batches of oysters "containing oysters of varying sizes and densities" (Declaration, page 2). This statement goes directly against the teachings of Tesvich '064, who teaches that "[d]uring separation step 14 the product is also separated into grades according to size" (col. 5, ll. 11-13). Tesvich '064 also teaches that the conditions used in his "mild heat treatment process" that are necessary to eliminate bacteria and allow the oyster to remain uncooked depends on the time, temperature and "grade size" of the oyster (col. 5, ll. 44-47). Accordingly, there is no convincing evidence that the final oyster product

10

Appeal No. 2005-1558
Application No. 09/949,704

tasted by Nelson is the final oyster product of Tesvich `064.

The Sunseri Declaration is essentially the same as the Nelson Declaration and we find the same deficiencies in this Declaration.  Accordingly, we adopt our comments from above.

For the foregoing reasons and those stated in the Answer, we determine that the examiner has established a prima facie case of anticipation based on the reference evidence.  Based on the totality of the record, including due consideration of appellant's arguments and evidence, we determine that the prima facie case of anticipation has not been adequately rebutted.  *See In re Brown, supra*.  Therefore we affirm the examiner's rejection of claim 5, and claims 27 through 38 which stand or fall with claim 5, under 35 U.S.C. § 102(e) as anticipated by Tesvich `064.

### OTHER ISSUES

In the event of further prosecution of this application or continuing applications before the examiner, the examiner and appellant should consider the patentability of the claimed subject matter now on appeal in view of Yasushi et al. (Yasushi), Japanese unexamined patent application No. H4-356156, published December 9, 1992.  This prior art reference was cited and applied in related application no. 09/121,725, and a rejection of the process claims in 09/121,725 was affirmed by the Board of Patent

11

Appeal No. 2005-1558
Application No. 09/949,704

Appeals & Interferences in a decision mailed March 10, 2003 (see

the Brief, unnumbered page 1; Appl. No. 09/121,725 is now on

appeal as Appeal No. 2005-1101).  Since the issue in Appl. No.

09/121,725 is anticipation of the process of making the oyster

product now claimed in this application, the Yasushi reference

would appear relevant to the product claims.

### SUMMARY

The decision of the examiner is affirmed.

Appeal No. 2005-1558
Application No. 09/949,704

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR § 1.136(a)(1)(iv)(2004).

**AFFIRMED**

TERRY J. OWENS                    )
Administrative Patent Judge )
                                  )
                                  )
                                  )
THOMAS A. WALTZ                   )    BOARD OF PATENT
Administrative Patent Judge )       APPEALS AND
                                  )       INTERFERENCES
                                  )
BEVERLY A. FRANKLIN               )
Administrative Patent Judge )

TAW/tf

13

Appeal No. 2005-1558
Application No. 09/949,704


KEATY PROFESSIONAL LAW CORPORATION
THOMAS S. KEATY
2533 AMERICAN WAY
PORT ALLEN, LA 70767

US005976601A

# United States Patent [19]

## Tesvich et al.

| [11] | Patent Number: | 5,976,601 |
|---|---|---|
| [45] | Date of Patent: | *Nov. 2, 1999 |

[54] **MILD HEAT TREATMENT OF OYSTERS IN THEIR NATURAL SHELL**

[76] Inventors: **John Tesvich**, 30300 Highway 23S, Buras, La. 70041; **Pat Fahey**, 1200 Harmony St., New Orleans, La. 70115; **John Schegan**, P.O. Box 308, Kenner, La. 70063

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/096,465**

[22] Filed: **Jun. 12, 1998**

[51] Int. Cl.$^6$ ............................. A22C 29/00; A23B 4/00

[52] U.S. Cl. ....................... 426/521; 426/524; 426/643

[58] Field of Search ........................ 426/520, 521, 426/524, 643

[56] **References Cited**

U.S. PATENT DOCUMENTS

| 3,615,726 | 10/1971 | McMillan | 99/217 |
|---|---|---|---|
| 3,658,559 | 4/1972 | Mohwinkel | 99/117 |
| 4,164,590 | 8/1979 | Mencacci | 426/407 |
| 4,659,574 | 4/1987 | Carlsson et al. | 426/524 |
| 4,992,289 | 2/1991 | Kiczek | 426/524 |
| 5,281,426 | 1/1994 | Pardo | 426/232 |
| 5,679,302 | 10/1997 | Tesvich et al. | 426/412 |
| 5,773,064 | 6/1998 | Tesvich et al. | 426/420 |

FOREIGN PATENT DOCUMENTS

0242183A1   4/1987   European Pat. Off. .

OTHER PUBLICATIONS

Ward, Donn: "Microbiological Aspects of Steam Shucking", *Food Science*, 1997.

Chai et al.:"Effect of Heat Processing on Quality of Pasteurized Oysters", *Journal of Food Science*, vol. 56, No. 5, 1991. pp. 1292–1294.

Chai et al.:"Extension of Shelf Life of Oysters by Pasteurization in Flexible Pouches", Journal of Food Science, vol. 49, 1984, pp. 331–332.

Chai et al.: "Bacterial Flora in Pasteurized Oysters after Refrigerated Storage", *Journal of Food Science*, vol. 53, No. 2, 1988, pp. 325–328.

Goldmintz et al.: "Bacteriological Evaluation of Steam Pasteurized Oysters, Crassostrea virginica", *Developments in Industrial Microbiology*, 1983, vol. 24, pp. 457–464.

(List continued on next page.)

*Primary Examiner*—George Yeung
*Attorney, Agent, or Firm*—Tom Hamill, Jr.

[57]                    **ABSTRACT**

A method of preparing raw oyster meat in the shell is disclosed which employs a mild heat treatment followed by chilling for the destruction of harmful pathogenic bacteria such as *Vibrio vulnificus*. The oysters are captured and transported to the processing plant in a refrigerated state. The oysters are then cleaned and graded into categories according the product size. The oysters are then placed into a continuous flow of sterilized water at a sufficient temperature and duration to kill the pathogens yet leave the meat in a raw state within the shell. Different temperatures and time durations have been found to give excellent results depending on the size of the oyster. It has been found that the internal temperature of the oysters, that is, the meat within the shell, must reach a minimum of 49 degrees centigrade and not exceed 53 degrees centigrade for maximum efficacy. Depending on oyster weight and warm water temperature, the oysters will be immersed from between about 10–45 minutes. The oysters are then removed from the heated water flow and are placed in a sterilized cold water bath or air convection cooler. At this point the treated oysters are ready for shucking using standard mechanical methods. The oysters remain in a raw state and in the shell throughout the process, prior to shucking. The shucking provides a treated, raw oyster meat free from harmful bacteria. The treated, raw oyster meat may be packed and stored by conventional structure. The pathogenic bacteria are reduced to an undetectable level in the oyster meat by this process. This process may be employed with any shellfish.

**5 Claims, 1 Drawing Sheet**





EXHIBIT

4

**5,976,601**

Page 2

## OTHER PUBLICATIONS

Cook & Ruple, "Cold Storage and Mild Heat Treatment as Processing Aids to Reduce the Numbers of *Vibrio vulnificus* in Raw Oysters", *Journal of Food Protection*, vol. 55, Dec. 1992, pp. 985–989.

Article, "Pasteurized oysters look fresh, taste raw", *Food Engineering*, Nov. 1979.

Article, "Low cost steam–heating of oysters reduces spoilage, improves shelf life", *Food Industries of South Africa*, Nov. 1979. (Dialog Abstract).

Article, "Developement of wet storage techniques for oysters and mussels ready for the market", *Southeast Asian Fisheries Development Center: Annual Report 1985*. (Dialog Abstract).

Article, "Steam Pasteurized Oysters—in some aspects more acceptable than the raw product", *Commerce News*, NOAA 1979. (Dialog Abstract).

Eduardo et al., "Pasteurized Surf Clams", Journal Article, CHILE, Feb. 1994. (Dialog Abstract).

**U.S. Patent**               Nov. 2, 1999                          **5,976,601**



FIG. 1

5,976,601

# 1

## MILD HEAT TREATMENT OF OYSTERS IN THEIR NATURAL SHELL

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates generally to heat treatment of oysters, and more particularly, to a heat treatment process to be employed with oysters while the oysters remain in their natural shell. This process is employed to reduce and eliminate harmful bacteria found in oysters, such as *Vibrio vulnificus*.

2. Description of the Prior Art

While sea foods are generally considered healthy and safe to consume, concerns about the safety of eating raw oysters is widespread. Bacteria, such as the autochthonous estuarine bacterium *Vibrio vulnificus*, may be transferred from the marine environment to the oyster. This bacterium has been shown to cause primary septicemia, gastroenteritis and other disorders in humans. Septicemia generally leads to secondary cutaneous lesions and necrotic ulcers of the extremities, approximately sixty percent of all known cases result in fatalities. Other bacterium may also be pathogenic and may be introduced to the human through consumption of raw oyster meat. Some 10–15 deaths a year nationwide are attributed to oyster consumption, most of the oysters being harvested in the Gulf of Mexico during the summer months. Those who are immune compromised, suffer from hepatitis, other liver ailments, or diabetes may be more susceptible to the harmful effects of the *Vibrio vunificus* bacterium. The Gulf Coast is the major producer of oysters, providing between 12 and 20 million pounds annually, well above half the national supply.

The *Vibrio vulnificus* are located in oysters, and primarily this method will be utilized to destroy this pathogenic organism to permit the harvesting of oysters during the warmer months and in warmer waters, especially in the southern United States, where it has been proposed by the Food and Drug Administration to suspend the harvesting of oysters during the summer months as a health precaution.

As a result of the above concerns, we began developing processes to destroy such bacteria. Our initial process as outlined in U.S. Pat. No. 5,679,392 heat treats oysters in their shell for their eventual serving raw on the half shell. This heat treatment process is utilized on oysters which have been bagged prior to immersion in a warm water bath. These oysters are immersed in water between a temperature of 43–60 degrees centigrade for a time period of 30–45 minutes. They are subsequently cooled, shucked and served on the half shell.

The new invention contemplates heat treating oysters in their shell as well, but without the bag. Also, the new invention contemplates a water bath of between 49–55 degrees centigrade for a time period of between of about 10–45 minutes depending on the size of the oysters, the temperature of the water, and the initial temperature of the oyster meat within the shell. The instant invention contemplates that the meat within the oyster shell must exceed a temperature of 49 degrees centigrade, yet not exceed a temperature of 53 degrees centigrade. Oysters which have been treated by the new process will be safe and be are able to be served at a raw bar in a raw state. However, it is mainly contemplated that oysters which have been treated by the instant process may be mechanically shucked and their meat packaged by conventional means. This will permit safe oyster meat to be available for commercial consumption on a large scale.

# 2

Thus, while the foregoing prior art indicates it to be known to use warm water to heat treat oysters while the oysters remain in their shell, the concept of treating such oysters without the bag has not been disclosed. Also, the specific internal meat temperature range which must be reached and not exceeded is not taught in the prior art. By eliminating the bagging step a significant cost and labor saving is realized. This process is also directed not only to permit a consumer to eat such a processed oyster on the half shell, but also contemplates the mechanical shucking and subsequent packaging of the treated oyster meat for the marketplace. The heat treatment temperature and time ranges for the various weight oysters permits the process to completely eliminate the *Vibrio vulnificus* bacteria from the oyster prior to the removal of its shell. Other advantages of the present invention over the prior art also will be rendered evident.

### SUMMARY OF THE INVENTION

To achieve the foregoing and other advantages, the present invention, briefly described, provides a method of treating raw oyster meat in the natural shell which employs a mild heat treatment and chilling for the destruction of harmful pathogenic bacteria such as *Vibrio vulnificus*.

The process may be outlined as follows. The oysters arrive at the processing plant in a refrigerated state. The oysters are then cleaned and graded into categories according the product size. The oysters are then placed into a continuous flow of water at a sufficient temperature and duration to kill the pathogens yet leave the meat in a raw state within the shell. Different temperatures and time durations have been found to give excellent results depending on the size of the oyster. The oysters are then removed from the heated water flow and are chilled. At this point the oysters are ready for shucking using standard mechanical methods. The oysters remain in a raw state and in the shell throughout the treatment process. At the completion of the treatment process, the treated oysters are ready to be shucked. The treated, raw oyster meat which has been removed from the shell may be packed and stored by conventional means. The pathogenic bacteria are reduced to an undetectable level in the oyster meat by this process.

Although this process is mainly directed to oysters, it may be employed with other marine organisms which have a shell. These organisms include bivalves, clams, or other such life forms.

The above brief description sets forth rather broadly the more important features of the present invention in order that the detailed description thereof that follows may be better understood, and in order that the present contributions to the art may be better appreciated. There are, of course, additional features of the invention that will be described hereinafter and which will form the subject matter of the claims appended hereto.

In this respect, before explaining at least the preferred embodiments of the invention in detail, it is to be understood that the invention is not limited in its application to the details of the construction and to the arrangements of the components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments and of being practiced and carried out in various ways. Also, it is to be understood, that the phraseology and terminology employed herein are for the purpose of description and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily

4

5,976,601

3

be utilized as a basis for designing other structures, methods, and systems for carrying out the several purposes of the present invention. It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.

It is therefore an object of the present invention to provide a process for the treatment of oysters which reduces harmful pathogenic bacteria, such as *Vibrio vulnificus, Vibrio cholerae* and *Vibrio parahaemolyticus* to undetectable levels.

It is therefore an object of the present invention to provide a process for the treatment of oysters which provides a mild heat treatment and a chilling of the oyster, while the oyster remains in its natural shell.

It is therefore an object of the present invention to provide a process for the treatment of oysters permitting the treated oysters to be shucked and have the treated, raw oyster meat to be packaged by conventional methods.

It is therefore an object of the present invention to provide a process for the treatment of oysters where the internal temperature of the oyster meat inside the shell during the heat treatment process must exceed 49 degrees centigrade, yet never exceed 53 degrees centigrade.

Another object of the present invention is to provide a process for the treatment of oysters which provides a time period for the heat-up step and a time period for the dwell step as part of the heat treatment process. The treatment time for the heat-up step depends on the initial internal oyster meat temperature within the shell, the warm treatment water temperature and the oyster weight. The time period for the dwell step is the pasteurization time where the oyster (still in the natural shell) remains in the warm treatment water depending if a medium or high treatment is desired. Medium or high treatment may be chosen depending on location and time of year of the harvesting of the oysters, as some areas have a greater density of *Vibrio vulnificus* depending on water temperature and salinity.

Another object of the present invention is to provide a process for the treatment of oysters where the mild heat treatment is performed by immersing the oysters in their natural shell in water of not less than 49 degrees centigrade and not more than 55 degrees centigrade.

These together with still other objects of the invention, along with the various features of novelty which characterize the invention, are pointed out with particularity in the claims annexed to and forming a part of this disclosure. For a better understanding of the invention, its operating advantages and the specific objects attained by its uses, reference should be had to the accompanying drawings and descriptive matter in which there are illustrated preferred embodiments of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be better understood and the above objects as well as objects other than those set forth above will become more apparent after a study of the following detailed description thereof. Such description makes reference to the annexed drawings wherein:

FIG. 1 is a block diagram in flowchart form showing the various steps of the process for the treatment of oysters which would eliminate the pathogenic bacteria.

DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings and tables, a new and improved mild heat treatment process for the treatment of oysters while they remain in their natural shell will be described.

4

Turning initially to FIG. 1, there is shown a block diagram describing the process for the mild heat treatment of oysters while the oysters remain in their natural shell. In its preferred form, the treatment process will include several steps. The first step will be the harvesting step 12. The oysters will be harvested in their indigenous environment by traditional techniques. These oysters live with the autochthonous estuarine bacterium *Vibrio vulnificus*, as well as other pathogenic bacterium. It is not possible to determine from the outward appearance of the oyster whether or not it is contaminated with any of the harmful bacterium, hence it may be appropriate to treat all harvested oysters. As a matter of fact, it has been determined that *Vibrio vulnificus* is present in virtually all oysters harvested in the Gulf of Mexico proximal the United States.

The oysters are then brought to the processing plant. The oysters are immediately placed in a refrigerated area, which maintains the mollusk in a living state.

The second step will be the cleaning step 14. During this stem mud, dirt, and any other external debris will be removed from the oyster. This will be followed by the third step 16 in which the oysters are graded by size and weight and separated into groups of similar size and weights. The separated oyster groups will be brought to the mild heat treatment area by conveyor or other equivalent means.

The fourth step in the process is the mild heat treatment step 18. The oysters, still in their natural shell are immersed in a bath or a continuous flow of warm water. The temperature of the water bath is between 49–55 degrees centigrade and the mild heat treatment process step lasts between 10–45 minutes depending on the grade size being treated. It has been determined that the internal temperature of the oyster meat in the shell must exceed 49 degrees centigrade in order to kill the bacteria. It has also been determined that if the internal temperature of the oyster meat in the shell exceeds 53 degrees centigrade that the edges of the meat begins to curl and shrink due to protein degradation. One may say that internal oyster meat temperatures in excess of 53 degrees centigrade cooks the oyster, as opposed to treating it.

Internal meat temperatures may be ascertained by random sampling during the actual processing to ensure quality control.

Referring now to Table 1 below, a chart for the processing time in minutes versus water temperature and oyster weight is provided. This table is based on an initial internal oyster meat temperature of 10 degrees centigrade. This table will provide one with the heat-up time that an oyster of a certain weight should be placed in the warm treatment water of a certain temperature. For example, oysters with a weight of between 151–190 grams will be selected to be treated in warm water that is 52 degrees centigrade. These oysters should remain in the warm water treatment for 16 minutes, if they have an initial internal temperature of 10 degrees centigrade.

The oysters will be further treated by what is termed a medium or high treatment process as shown in Table 2. Some harvesting areas are prone to having higher populations of *Vibrio vulnificus* contaminated oysters. The main factors in contamination include water temperature and salinity. Oysters harvested in the summer months in areas where *Vibrio vulnificus* is present in high levels will require high treatment. Oysters harvested during the winter months in cleaner waters may only require medium treatment.

Assuming that one desires high treatment on the above example, an additional 7 minutes treatment time will be added to the 16 minutes heat-up time giving a total treatment

5

5,976,601

5

time of 23 minutes. At this point all *Vibrio vulnificus* bacteria will be destroyed.

It has also been determined that the initial internal oyster meat temperature is a very important factor in the time determination for length of treatment. Table 1 reflects an initial internal oyster meat temperature of 10 degrees centigrade. One minute time will be added for each 4 degree centigrade cooler the internal oyster meat temperature is. One minute time will be subtracted for each 4 degree centigrade warmer the internal oyster meat temperature is. Initial internal oyster meat temperature within the shell may be determined by taking a random sample of temperatures of the meat of oysters in that weight group.

TABLE 1

Processing Time in Minutes versus Water Temperature and Oyster Weight*
Water Temperature Degrees Celsius

| Average Oyster Weight, grams | 49° C. | 50° C. | 51° C. | 52° C. | 53° C. | 54° C. | 55° C. |
|---|---|---|---|---|---|---|---|
| 75–125 | 20 min | 18 | 16 | 14 | 12 | 10 | 8 |
| 126–150 | 21 | 19 | 17 | 15 | 13 | 11 | 9 |
| 151–190 | 22 | 20 | 18 | 16 | 14 | 12 | 10 |
| 190–215 | 23 | 21 | 19 | 17 | 15 | 13 | 11 |
| 216–265 | 24 | 22 | 20 | 18 | 16 | 14 | 12 |
| 266+ | 25 | 23 | 21 | 19 | 17 | 15 | 13 |

*based on initial internal oyster meat temperature of 10 degrees Celsius
Adjust processing time for initial internal oyster meat temperature variation as follows:
1 minute additional for 4° C. cooler
1 minute less for each 4° C. warmer

After the proper internal oyster meat temperature is reached, the oysters are allowed to dwell in the warm water at the selected pasteurization temperature for a period of 2–15 minutes depending on the temperature of the water and the level of treatment desired as shown in Table 2.

TABLE 2

Pasteurization Dwell Times (minutes) For Medium and High Treatment Levels
Pasteurization Temperature: ° C.

| | 49° C. | 50° C. | 51° C. | 52° C. | 53° C. | 54° C. | 55° C. |
|---|---|---|---|---|---|---|---|
| Medium treatment | 10. min | 8.5 | 6.5 | 5. | 4. | 3. | 2. |
| High Treatment | 15. min | 12. | 9.5 | 7. | 5.5 | 4. | 3. |

In order to clearly understand how to determine the time periods for the mild heat treatment of the oysters where the oysters remain in their shell, the following examples are provided:

EXAMPLE 1

Large oysters in excess of 266 grams have been harvested in an area thought to require high treatment and are brought to the plant where they have been cooled and cleaned. It has been determined that their average internal meat temperature is about 10 degrees centigrade. The warm treatment water is kept at 55 degrees centigrade. The heat up time is developed from Table 1 to be 13 minutes. An additional 3 minutes is added due to the high treatment required by Table 2. Total time the oysters should be immersed in the warm treatment water is 15 minutes.

EXAMPLE 2

Small oysters less than 125 grams have been harvested in an area thought to require medium treatment and are brought

6

to the plant where they have been cooled and cleaned. It has been determined that their average internal meat temperature is about 14 degrees centigrade. The warm treatment water is kept at 50 degrees centigrade. The heat up time is developed from Table 1 to be 18 minutes. A minute is subtracted from the treatment time as the internal oyster meat temperature is 14 degrees centigrade, reducing the treatment time to 17 minutes. An additional 8.5 minutes is added due to the medium treatment required by Table 2. Total time the oysters should be immersed in the warm treatment water is 25.5 minutes.

EXAMPLE 3

Medium large oysters which weigh between 216–275 grams have been harvested in an area thought to require no extra treatment and are brought to the plant where they have been cooled and cleaned. It has been determined that their average internal meat temperature is about 6 degrees centigrade. The warm treatment water is kept at 52 degrees centigrade. The heat up time is developed from Table 1 to be 18 minutes. No additional time is required due to initial conditions. Total time the oysters should be immersed in the warm treatment water is 18 minutes.

After the oysters have been heat treated in the warm treatment water for an appropriate time period they are cooled. The fifth step in the process is the cooling step 20. The treated oysters are placed in a chiller, refrigeration unit or immersed in cold water and quickly chilled. Quick chilling to an internal oyster meat temperature of less that about 7 degrees centigrade is preferred.

The sixth step in the process is mechanically shucking 22 the treated oysters. As a result of the mechanical shucking, treated, raw oyster meat is provided. This treated, raw oyster meat has been 'pasteurized', purged of living *Vibrio vulnificus*, and is safe for consumption. During the mild heat treatment step 18 the live oyster is killed. When this happens, the abductor muscle of the oyster body is relaxed which makes the oyster easier to shuck. It has been found that oysters treated by this process have increased shucking yields. This is due to the fact that most of the muscle remains with the shucked oyster meats, as opposed to non-treated oysters where a large portion of the abductor muscle remains with the shell and is disposed of as waste. Another factor is that the treated oysters appear to absorb some of the water, which increases their weight. The mild heat treatment step 18 stabilizes the oyster meat which is 95% water.

The seventh step in the process is the packaging step 24. During this step the treated, raw oyster meat is packaged for transport, storage, and sale. The mild heat treatment process 18 lowers the bacterial count which in turn will improve shelf life of the packaged, treated, raw oyster meat.

It is apparent from the above that the present invention accomplishes all of the objectives set forth by providing a new and improved process for the mild heat treatment of oysters in their natural shell which reduces harmful pathogenic bacteria, such as *Vibrio vulnificus*, to undetectable levels.

It is to be understood that the above tables and the time-temperature matrices developed therein are specific for the Gulf oyster *Crassostrea virginica*. There are many different varieties of shellfish which may be beneficially treated by the mild heat treatment process, with changes in temperatures of the heat treatment water and duration of immersion. Various factors, including shell thickness, density, porosity, species and pathogen level may be considered when contemplating modifying the above process for maximum efficiency in those cases.

5,976,601

7

With respect to the above description, it should be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to those skilled in the art, and therefore, all relationships equivalent to those illustrated in the drawings and described in the specification are intended to be encompassed only by the scope of appended claims.

While the present invention has been shown in the drawings and fully described above with particularity and detail in connection with what is presently deemed to be the most practical and preferred embodiments of the invention, it will be apparent to those of ordinary skill in the art that many modifications thereof may be made without departing from the principles and concepts set forth herein. Hence, the proper scope of the present invention should be determined only by the broadest interpretation of the appended claims so as to encompass all such modifications and equivalents.

What is claimed as being new and desired to be protected by Letters Patent of the United States is as follows:

1. A process for the heat treatment of oysters where the oysters remain in their natural shell during the heat treatment step of the process, including the steps of:

a) heat treating the live, raw oysters in their natural shell, by placing the raw oysters in their natural shell into warm water at about a temperature of 49–55 degrees centigrade for about 10–45 minutes, said heat treating

8

being at a temperature and for a time period sufficient to destroy harmful pathogenic bacteria including *Vibrio vulnificus*, yet leave the oysters in a raw state,

b) cooling the heat treated, raw oysters in their natural shell by placing the oysters into cold water, chilling the meat inside the shell to less than 7 degrees centigrade, whereby the heat treated, pathogen free, raw oysters in their natural shell are ready for shucking.

2. A process for the heat treatment of oysters where the oysters remain in their natural shell during the heat treatment step of the process as claimed in claim 1 wherein the temperature of the oyster meat within the natural oyster shell must exceed about 49 degrees centigrade.

3. A process for the heat treatment of oysters where the oysters remain in their natural shell during the heat treatment step of the process as claimed in claim 2 wherein the temperature of the oyster meat within the natural oyster shell must not exceed 53 degrees centigrade.

4. A process for the heat treatment of oysters where the oysters remain in their natural shell during the heat treatment step of the process as claimed in claim 1, where the treated oysters are shucked, providing treated, raw oyster meat.

5. A process for the heat treatment of oysters where the oysters remain in their natural shell during the heat treatment step of the process as claimed in claim 4, wherein said treated, raw oyster meat is packaged.

*   *   *   *   *

## EXHIBIT B

## FORM OF ASSIGNMENT TO MOTIVATIT

## ASSIGNMENT OF PATENTS

WHEREAS, Innovatit Seafood Systems, L.L.C., a Louisiana limited liability company, with an address of 116 East Ellendale Estates Drive, Houma, Louisiana 70360 (hereinafter referred to as "ASSIGNOR"), is the owner of United States and other patents and patent applications set forth in Schedule A attached hereto and made a part hereof (the listed patents and patent applications collectively referred to herein as the "PATENTS");

WHEREAS, Motivatit Seafoods, L.L.C., a Louisiana limited liability company, with an address of 412 Palm Ave., Houma, Louisiana 70364 (hereinafter referred to as "ASSIGNEE"), is desirous of acquiring all right, title and interest in the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, and all inventions described in the PATENTS owned by ASSIGNOR;

NOW THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR hereby sells, assigns and transfers to ASSIGNEE, the entire right, title and interest in and to the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, all inventions described in the PATENTS owned by ASSIGNOR, and any and all foreigns, divisions, reissues, continuations and extensions thereof, and all rights of ASSIGNOR associated therewith, including the right to sue for and collect damages by reason of past infringements of the PATENTS. ASSIGNOR further assigns to ASSIGNEE the right to claim priority or other rights deriving from any patent applications by virtue of internatio[nal] convention, treaty or otherwise. The PATENTS, and all other patents, patent applicatio[ns]

**EXHIBIT**

**5**

registrations and inventions assigned hereby, to be held and enjoyed by ASSIGNEE for its use

and benefit and by its successors and assigns for their use and benefit as fully and entirely as the

same would have been held and enjoyed by ASSIGNOR had this assignment, transfer and sale

not been made.

Executed at _Houma_ , _Louisiana_ , this 28TH day of _September_ , 2007.

ASSIGNOR
**Innovatit Seafood Systems, L.L.C.**

By _____
Name: Steven A. Voisin
Title: Manager

Executed at _Houma_ , _Louisiana_ , this 28th day of _September_ , 2007.

ASSIGNEE
**Motivatit Seafoods, L.L.C.**

By _____
Name: Michael C. Voisin
Title: Vice President

State of Louisiana    )
                         ) ss.
Parish of _TERREBONNE_

I certify that I know or have satisfactory evidence that Steven A. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Manager of **Innovatit Seafood Systems, L.L.C.**, to be the free and voluntary act of said company for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robert B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

State of Louisiana    )
                         ) ss.
Parish of _TERREBONNE_

I certify that I know or have satisfactory evidence that Michael C. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Vice President of **Motivatit Seafoods, L.L.C.**, to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated _SEPT 28, 2007_
Signature of
Notary Public _Robert B Butler_
Printed Name _ROBERT B BUTLER III_
My Appointment Expires _at death_

# SCHEDULE A

## PATENTS

| Country | Title | Application Number / Filing Date | Patent or Publication Number / Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/457,835<br>12/9/1999 | 6,217,435<br>4/17/2001 | Granted |
| United States | Apparatus For Pressure Treating Shellfish | 09/524,442<br>03/14/2000 | 6,393,977<br>05/28/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/736,708<br>12/15/2000 | 6,426,103<br>07/30/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/723,363<br>11/27/2000 | 6,537,601<br>03/25/2003 | Granted |
| United States | Bottom Discharge Container | 10/141,656<br>05/08/2002 | 6,824,019<br>11/30/2004 | Granted |
| United States | High Pressure Process to Eliminate Vibrios And Other Bacteria In Oysters Clams and Other Shellfish | 60/071,819<br>01/20/1998 | | Expired Provisional Application |
| United States | High Pressure Process to Shuck Oysters Clams and Other Shellfish | 60/074,582<br>02/13/1998 | | Expired Provisional Application |
| United States | Method of Processing Crustaceans | 11/500,557<br>8/8/2006 | | Pending |
| United States | Another Method of Fabricating the Yoke and Chamber of High Pressure Processing Equipment | 60/086,484<br>05/26/1998 | | Expired Provisional Application |

| Country | Title | Application Number Filing Date | Patent or Publication Number Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/121,725 07/24/1998 | | Court Appeal Pending |
| United States | Quick Removable Bottom Lid to Facilitate Dumping Water and Product From High Pressure Processing Basket | 60/289,581 05/09/2001 | | Expired Provisional Application |
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/949,704 09/10/2001 | | Court Appeal Pending |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/302,116 04/29/1999 | | Abandoned |
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/524,444 03/14/2000 | | Abandoned |
| Europe | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | EP1990937429 07/23/1999 | EP 1 100 340 B1 09/29/2004 | Granted |
| Canada | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 2,338,499 01/24/2001 | | Pending |
| PCT | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | US99/16759 07/23/1999 | WO2000/04785 02/03/2000 | Published |
| PCT | A Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | US00/11127 04/26/2000 | WO2000/65923 11/09/2000 | Published |
| Germany | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A 07/23/1999 | DE69920715D 09/29/2004 | Granted |

| Country | Title | Application Number / Filing Date | Patent or Publication Number / Issue Date | Status |
|---|---|---|---|---|
| Spain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | Spanish National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |
| France | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | French National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |
| Great Britain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | Great Britain National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |
| Ireland | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | Irish National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |
| Italy | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | Irish National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |
| The Netherlands | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A / 07/23/1999 | Netherlands National Part of EP 1 100 340 B1 / 09/29/2004 | Granted |

EXHIBIT C

FORM OF ASSIGNMENT TO AVURE

ASSIGNMENT OF PATENTS

WHEREAS, Motivatit Seafoods, Inc., a Louisiana limited liability company, with an address of 412 Palm Ave., Houma, Louisiana 70364 (hereinafter referred to as "ASSIGNOR"), is the owner of United States and other patents and patent applications set forth in Schedule A attached hereto and made a part hereof (the listed patents and patent applications collectively referred to herein as the "PATENTS"), such ownership being obtained by assignment from Innovatit Seafood Systems, L.L.C., a Louisiana limited liability company;

WHEREAS, Avure Technologies Incorporated, a Delaware corporation, with an address of 22408 – 66th Avenue South, Kent, Washington 98032 (hereinafter referred to as "ASSIGNEE"), is desirous of acquiring all right, title and interest in the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, and all inventions described in the PATENTS owned by ASSIGNOR;

NOW THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR hereby sells, assigns and transfers to ASSIGNEE, the entire right, title and interest in and to the PATENTS, all Letters Patent that may be granted for the PATENTS in the United States and foreign countries, all inventions described in the PATENTS owned by ASSIGNOR, and any and all foreigns, divisions, reissues, continuations and extensions thereof, and all rights of ASSIGNOR associated therewith, including the right to sue for and collect damages by reason of past infringements of the PATENTS. ASSIGNOR further assigns to ASSIGNEE the right to claim priority or other rights deriving from any patent applications by virtue of international

convention, treaty or otherwise.  The PATENTS, and all other patents, patent applications,

registrations and inventions assigned hereby, to be held and enjoyed by ASSIGNEE for its use

and benefit and by its successors and assigns for their use and benefit as fully and entirely as the

same would have been held and enjoyed by ASSIGNOR had this assignment, transfer and sale

not been made.



Executed at _Houma_ , _Louisiana_ , this _28th_ day of _September_ , 2007.

ASSIGNOR
Motivatit Seafoods, L.L.C.

By _____

Name: Michael C. Voisin
Title: Vice President



Executed at _Houma_ , _Louisiana_ , this _28th_ day of _September_ , 2007.

ASSIGNEE
Avure Technologies Incorporated

By _____

Name: Don P. Adams Jr.
Title: President & CEO ,

State of Louisiana    )
                      ) ss.
Parish of _TERREBONNE_

     I certify that I know or have satisfactory evidence that Michael C. Voisin is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the Vice President of Motivatit Seafoods, L.L.C., to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated    SEPT 28, 2007
Signature of
Notary Public    _Robt M Butler_
Printed Name    ROBERT B BUTLER III
My Appointment Expires    at death

State of Louisiana    )
                      ) ss.
Parish of _TERREBONNE_

     I certify that I know or have satisfactory evidence that Don P. Adams Jr. is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute this instrument, and acknowledged it as the President & CEO of Avure Technologies Incorporated, to be the free and voluntary act of said corporation for the uses and purposes mentioned in the instrument.

Dated    SEPT 28, 2007
Signature of
Notary Public    _Robt B Butler_
Printed Name    ROBERT B BUTLER III
My Appointment Expires    at death

# SCHEDULE A

## PATENTS

| Country | Title | Application Number / Filing Date | Patent or Publication Number / Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/457,835<br>12/9/1999 | 6,217,435<br>4/17/2001 | Granted |
| United States | Apparatus For Pressure Treating Shellfish | 09/524,442<br>03/14/2000 | 6,393,977<br>05/28/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/736,708<br>12/15/2000 | 6,426,103<br>07/30/2002 | Granted |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/723,363<br>11/27/2000 | 6,537,601<br>03/25/2003 | Granted |
| United States | Bottom Discharge Container | 10/141,656<br>05/08/2002 | 6,824,019<br>11/30/2004 | Granted |
| United States | High Pressure Process to Eliminate Vibrios And Other Bacteria In Oysters Clams and Other Shellfish | 60/071,819<br>01/20/1998 | | Expired Provisional Application |
| United States | High Pressure Process to Shuck Oysters Clams and Other Shellfish | 60/074,582<br>02/13/1998 | | Expired Provisional Application |
| United States | Method of Processing Crustaceans | 11/500,557<br>8/8/2006 | | Pending |
| United States | Another Method of Fabricating the Yoke and Chamber of High Pressure Processing Equipment | 60/086,484<br>05/26/1998 | | Expired Provisional Application |

| Country | Title | Application Number / Filing Date | Patent or Publication Number / Issue Date | Status |
|---|---|---|---|---|
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/121,725 <br> 07/24/1998 | | Court Appeal Pending |
| United States | Quick Removable Bottom Lid to Facilitate Dumping Water and Product From High Pressure Processing Basket | 60/289,581 <br> 05/09/2001 | | Expired Provisional Application |
| United States | Process of Elimination of Bacteria in Shellfish of Shucking Shellfish and an Apparatus Therefor | 09/949,704 <br> 09/10/2001 | | Court Appeal Pending |
| United States | Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | 09/302,116 <br> 04/29/1999 | | Abandoned |
| United States | Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 09/524,444 <br> 03/14/2000 | | Abandoned |
| Europe | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | EP1990937429 <br> 07/23/1999 | EP 1 100 340 B1 <br> 09/29/2004 | Granted |
| Canada | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | 2,338,499 <br> 01/24/2001 | | Pending |
| PCT | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | US99/16759 <br> 07/23/1999 | WO2000/04785 <br> 02/03/2000 | Published |
| PCT | A Process of Elimination of Bacteria in Shellfish and of Shucking Shellfish | US00/11127 <br> 04/26/2000 | WO2000/65923 <br> 11/09/2000 | Published |
| Germany | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A <br> 07/23/1999 | DE69920715D <br> 09/29/2004 | Granted |

| Country | Title | Application Number | Patent or Publication Number | Status |
| --- | --- | --- | --- | --- |
| | | Filing Date | Issue Date | |
| Spain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Spanish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| France | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | French National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Great Britain | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Great Britain National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Ireland | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| Italy | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Irish National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |
| The Netherlands | A Process of Elimination of Bacteria in Shellfish, of Shucking Shellfish and an Apparatus Therefor | N/A | Netherlands National Part of EP 1 100 340 B1 | Granted |
| | | 07/23/1999 | 09/29/2004 | |