IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC and AVURE TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMMISSIONER FOR PATENTS, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 06-0825(JR) |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiffs, Innovatit Seafood Systems, L.L.C. and Technologies, Inc. respectfully reply to the Defendant's Opposition to Plaintiff's Motion for Summary Judgment. Plaintiffs brought the present action under 35 U.S.C. § 145 challenging the decision of the Board of Patent Appeals and Interferences ("Board"), which affirmed the examiner's rejection of claims 5 and 27 – 38 of application Serial No. 09/949,704. As set forth in the attached Memorandum of Points and Authorities, the Defendant failed to prove that it is entitled to judgment as a matter of law and failed to demonstrate that there any genuine issues of fact that would entitle it to a trial.

In view of the above, the Plaintiff's respectfully request that the Defendant's Motion for Summary Judgment be denied and the Plaintiffs' Cross-motion for Summary Judgment be granted.

Respectfully submitted,

/s/Thomas S. Keaty
Thomas S. Keaty, *pro hac vice*
Attorney for Plaintiff
Keaty Professional Law Corporation

2140 World Trade Center
No. 2 Canal Street
New Orleans, LA 70130
(504) 524-2100
(504) 524-2105 (fax)

## CERTIFICATE OF SERVICE

I herby certify that on January 4, 2008, I electronically filed the foregoing with the clerk of court by using CM/ECF system, with the US District Court for the District of Columbia, 333 Constitution Ave., NW, Washington DC 20001, which will send a notice of electronic filing to the following:

Robin M. Meriweather, D.C. Bar #490114
Jeffrey A. Taylor, D.C. Bar #498610
Rudolph Contreras, D.C. Bar
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)

/s/ Thomas S. Keaty
Thomas S. Keaty

# TABLE OF AUTHORITIES

**CASES**

341 F.2d at 929 .................................................................................................................. 12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986), ..................................... 14

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). ................................................... 13

Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373, (10th Cir. 988) ................ 15

Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education and Research,
    304 F.3d 1221, 1227 (Fed. Cir. 2002) ........................................................................... 2

ExxonMobil Chemical Patents Inc. v. Godici, 2002 WL 34233002 (D.D.C. 2002) ........ 11

*Id.* at 511 ........................................................................................................................... 13

In re Hedges, 783 F.2d 1038 (C.A.F.C. 1986) ................................................................. 11

In re Hounsfield, 699 F.2d 1320, 1324, 216 USPQ 1045, 1049 (Fed.Cir.1982) .............. 11

In re Johnson, 394 F.2d 591 (CCPA 1968) ......................................................................... 6

In re Luck, 476 F.2d 650 (CCPA 1973) .............................................................................. 5

In re Nygard, 341 F.2d 924, 928-9, 144 USPQ 586, 590 (CCPA 1965) ........................... 12

In re Wertheim, 541 F.2d 257 (CCPA 1976) ...................................................................... 6

In re Zeidler, 682 F.2d 961, 967, 215 USPQ 490, 494 (CCPA 1982) .............................. 11

McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995) ..................... 13

McNeely v. Commissioner of Patents, 334 F.Supp. 564 (D.C.D.C. 1971) ....................... 11

Scripps Clinic & Research Foundation v. Genentech, Inc.,
    927 F.2d 1565, 1576 (Fed. Cir. 1991) ........................................................................... 2

**STATUTES**

37 C.F.R. § 41.50(a)(1) ..................................................................................................... 10

35 U.S.C. § 102(b) .............................................................................................................. 1

37 CFR 1.132 ...................................................................................................................... 8

**OTHER AUTHORITIES**

MPEP § 1211 .................................................................................................................... 10

**RULES**

Fed.R.Civ.P. 56.1 .............................................................................................................. 14

Fed.R.Civ.P. 19 .............................................................................................................................. 1

Fed.R.Civ.P. Rule 56(e) ............................................................................................................ 13

Fed.R.Civ.P. 56(f) ............................................................................................................. 14, 15

Case 1:06-cv-00825-JR     Document 36     Filed 01/04/2008     Page 4 of 18

TABLE OF CONTENTS

**I.**   THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ................................................................................................................... 1

    A.   Defendant Has Not Established That the Tesvich Mild-heat treatment Process Discloses All Features of the Asserted Claims 5 and 27 - 38, and, Therefore, Cannot Prove It Is Entitled to Summary Judgment ................... 1

    B.   The Tesvich Oysters Must Be Mechanically Shucked and Adductor Muscle Cut ................................................................................................ 2

    C.   Tesvich Does not Teach Rapid Cool Down ................................................ 3

    D.   The Asserted Product-by-Process Claims Define Structural Differences That Cannot Result From the Tesvich Method .......................................... 4

    E.   Process Limitations Cannot Be Ignored in Analyzing Patentability of Product-by-process Claims ......................................................................... 5

    F.   Skilled Artisans Recognize the Difference in the Claimed Product and Method of Tesvich ...................................................................................... 6

**II.**   THE DEFENDANT'S REQUEST FOR REMAND SHOULD BE DENIED ....... 9

**III.**   THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL THEIR CLAIMS BECAUSE DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO ANY OF THE DEFENSES ............................................................................................... 11

**IV.**   DEFENDANT HAS FAILED TO MEET ITS BURDEN OF SHOWING THAT FURTHER DISCOVERY IS NECESSARY CONCERNING ANY OF ITS DEFENSES ............................................................................................................ 12

CONCLUSION ................................................................................................................ 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC and AVURE TECHNOLOGIES, INC., ) ) ) Plaintiffs, ) ) v. ) ) COMMISSIONER FOR PATENTS, ) ) Defendant ) | Civil Action No. 06-0825(JR) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Innovatit Seafood Systems, L.L.C. and Avure Technologies, Inc., joined as a party under Rule 19 FRCP ("Plaintiffs"), reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment filed by Commissioner for Patents ("Defendant") on November 30, 2007.

**I.  THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED**

  **A.  Defendant Has Not Established That the Tesvich Mild-heat treatment Process Discloses All Features of the Asserted Claims 5 and 27 - 38, and, Therefore, Cannot Prove It Is Entitled to Summary Judgment**

The Tesvich product is not the same product that is claimed in the asserted claims 5 and 27 -38. To establish that a publication anticipates a claim under 35 U.S.C. § 102(b), the PTO must show that all features of the asserted claims are found in a single prior art reference. Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education and Research, 304 F.3d 1221, 1227 (Fed. Cir. 2002) (stating that anticipation "requires that all of the elements and limitations of the claimed subject matter must be expressly or

1

inherently described in a single prior art reference"). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). It is essential therefore, that persons of ordinary skill in the art recognize the claimed product as being the same (no different than) the product that could be produced by the Tesvich method.

In paragraph 19 of the Defendant's Response to Plaintiff's Statement of Uncontested Facts, the Defendant again asserts that the product that is produced by the Tesvich mild-heat treatment method is the same as the product of the instant claims, i.e. "a raw, shucked oyster free from harmful bacteria." In paragraph 27 of the Defendant's Response, the Defendant acknowledges that the consumer shucks the oyster, not the processor.

### B. The Tesvich Oysters Must Be Mechanically Shucked and Adductor Muscle Cut

The Defendant misleads the Court by failing to acknowledge the fact that the Tesvich oyster has to be mechanically shucked, that is the adductor muscle must be cut before the oyster shell can be removed. See, for instance, a later patent of Tesvich, patent No. 5,976,601, which states: "Oysters which have been treated by the new process will be safe and be able to be served at a *raw bar in a raw state. However, it is mainly contemplated that oysters which have been treated by the instant process may be mechanically shucked* and their meat packaged by conventional means." (emphasis added) The term "raw bar" is the same term that is used in the '064 patent and the '601 patent; the process is virtually the same, except that the '601 patent discusses oyster meat

2

temperature as opposed to the water bath temperature of the '064 patent. The inventors are the same and the mild-heat treatment is the same in both '064 and the '601 patents. The same understanding of the necessity to cut the muscle holding the oyster shell halves together is shared by the persons skilled in the art. See statements of Drs. Jon W. Bell and J. David Bankston, Exhibit B, who stated that the oysters treated by heat according to Tesvich (Ameripure) method did not result in release of the adductor muscle and that manual shucking was required as a post-process treatment.

See, also explanations on how to shuck oysters available at http://www.wdfw.wa.gov/fish/shelfish/beachreg/oystershuck.htm or http://www.penncoveshellfish.com/HowToShuckOysters.htm (last visited December 17, 2007), which instruct the user to cut the adductor muscle with a knife in order to open, that is shuck the oyster.

Consequently, the Tesvich method does not result in a shucked oyster; the oyster is shucked by the consumer, not the seafood processor, who had bathed the oyster in a warm bath.

### C. Tesvich Does not Teach Rapid Cool Down

The Defendant erroneously asserts that Tesvich teaches a process of quick coo-down following the warm water bath processing. In fact, Tesvich states the following regarding the fifth step of the process:

> "The fifth step in the process is the cool down step 22. The racks, if employed, are removed from the hot fluid bath and the product is then placed in a cold fluid bath. The cold fluid bath will cool the mollusks to less than about 45 degrees Fahrenheit during the cool down step and the temperature may be selected to be any temperature desired below 45 degrees Fahrenheit for optimum results. The cold fluid bath is preferably between the temperatures of about 28-36 degrees Fahrenheit and is preferably of a continuous flow variety, that is, the fluid continuously

3

> flows about the product due to the action of an impeller or pump. This temperature range is preferred, but those skilled in the art will recognize that other temperatures (either higher or lower) will also serve to cool the mollusks. The banded mollusks are cooled in the cool water for about 15 to 20 minutes depending on which grade (size and weight) of product is being treated."

A thorough review of the above paragraph fails to show the use of the term "rapid," "quick," or any equivalent thereto. If anything, the 15-20 minute cooling is a very slow process.

### D.     The Asserted Product-by-Process Claims Define Structural Differences That Cannot Result From the Tesvich Method

The asserted claims basically recite a product, post-pressurized bacteria-free raw shellfish (oysters and molluscan shellfish) that has been subjected to high pressure of a predetermined value, more specifically in the range of 20,000 p.s.i. and 50,000 p.s.i. to render the product substantially free from pathogenic naturally-occurring marine bacteria, while the sensory characteristics of raw shellfish are retained. Additionally, the shellfish is pressure-shucked.

The Defendant, however, ignored the "post-pressurized," "subjected to high pressure" and "pressure-shucked" product limitations, interpreting the claims as merely reciting a bacteria-free shucked raw molluscan product. In other words, the PTO interpreted the disclosure of the '064 patent as teaching essentially any bacteria-free shellfish no matter what other qualities of the product are missing. If one accepts this reasoning then a Samurai sword, produced by a painstaking process of heating, folding and forge-welding of thousands of layers of steel would be identical to a cheap reproduction sword because it would not matter what qualities the manufacturing process imparted on the final product. One can easily see how absurd such a conclusion might be.

4

### D.  Process Limitations Cannot Be Ignored in Analyzing Patentability of Product-by-process Claims

The Defendant asserts that the rules applied to infringement analysis are totally inapplicable to the patentability of product-by-process analysis and that patentability of the product-by-process claims is to be determined only by the product and not by the process stated in the claims. It is not so. See, for instance, In re Luck, 476 F.2d 650 (CCPA 1973), which reversed the examiner's rejection of the product-by-process claims because the PTO examiner did not attach significance to the process limitations. In Luck, the claim recited:

> A hollow light transmitting lamp-bulb-shaped glass member adapted to surround a source of radiations, a coating carried on the external surface of said glass member …
> ….
> (d) said coating having been affixed to said glass member by applying thereon a liquid organic solvent having dissolved therein said polymer, said organofunctional silane and said additive organic substance, and said coated glass member thereafter being baked.

The PTO examiner did not regard as significant the process limitation stated in part (d) of the claim. The CCPA reversed, stating:

> As for the method of application, it is well established that product claims may include process steps to wholly or partially define the claimed product… To the extent these process limitation distinguish the *product* over the prior art, they must be given the same consideration as traditional product characteristics. In the present case, we cannot agree with the Patent Office that the absence of the carrier in the final product renders the carrier immaterial. The method of application could well result in the difference in a coated article. . .

Thus, in Luck, CCPA clearly held that process limitations are to be considered in a product claim to patentably distinguish the product over the prior art. Subsequent decisions have held the same as Luck.[1]

---

[1] In re Wertheim, 541 F.2d 257 (CCPA 1976); In re Johnson, 394 F.2d 591 (CCPA 1968)

5

E.   **Skilled Artisans Recognize the Difference in the Claimed Product and Method of Tesvich**

The Defendant erroneously asserts that "one of ordinary skill in the art would not be able to tell the difference between a raw oyster that has been pressurized according to the disclosed process, and one that has not." In fact, powerful evidence submitted by the Plaintiffs testifies to exactly the opposite. The Plaintiff introduced the statement of Dr. Marilyn B. Kilgen, Professor and Head of the Department of Biological Sciences of Nicholls State University (Exhibit A). As Professor Kilgen explained, high-pressure processing of shellfish involves mechanical disruption of the non-covalent bonds that hold the tertiary structure of a protein together, while the heating process (such as Tesvich's) involves "melting" of the non-covalent bonds holding the tertiary structure of the protein together. This "melting" process is different from the mechanical disruption that occurs when shellfish, such as oysters, is processed using high pressure. Compare broken glass with molten glass. Moreover, Professor Kilgen's statement supports the Plaintiff position that the claimed terms, such as "post-pressurized" allow persons skilled in the art (in this case a person of more than ordinary skill in the art) to easily appreciate the distinction between a heated shellfish product (Tesvich '064) and a post-pressurized product of the instant claims. These terms provide sufficient information to the artisans in the field on the structure and biological features possessed by the shellfish products as a result of exposing the products to the different processes.

The Plaintiffs also introduced a letter from Drs. Jon W. Bell and J. David Bankston, who stated that the oysters treated by heat according to Tesvich (Ameripure) method did not result in release of the adductor muscle and that manual shucking was required as a post-post treatment. In contrast, the claimed invention produces a

6

structurally different product, a pressure-shucked product, where the adductor muscle of an oyster is released without resort to manual shucking. The Defendant attempts to discredit these conclusions by attacking the statement on the non-substantive grounds.

Drs. Bell and Bankston further stated that their conclusion is supported by the recent studies conducted by the LSU Department of Food Sciences, specifically by Dr. Jimmy Xu. The studies involved evaluation of fatty acids as the building blocks of lipids, the substances that affect physiological functioning of an organism, such as oysters, after harvest. Dr. Xu's studies confirmed that the product produced according to the Voisin method of high pressure processing (HPP) is different from untreated oysters and oysters treated using heated water/chilled water method of Tesvich et al. (Ameripure, Inc.) The Defendant attacks these studies as well by questioning the number of oysters eaten by the students-panelists (tasters).

The Plaintiffs also submit a Declaration under 37 CFR 1.132 signed by Christopher Lee Nelson (Exhibit C), a person having more than ordinary skill in art of seafood biology, microbiology and industry, who stated that he was intimately familiar with the product produced by the Tesvich et al's patent and with the product produced by the Plaintiff's method. According to Mr. Nelson, the heat method of Tesvich et al is difficult to control due to wide irregularities of the treated product (differences in shell thickness, density and size). To kill bacteria in a batch of oysters having different shells the product must be treated at the higher level of temperature to ensure that thicker and denser shelled oysters are properly treated. Higher heat causes overcooking of less dense oysters, resulting in drying of edges and protein degradation. Moreover, when manually shucked after heat treatment according to Tesvich patent, oysters exhibited inconsistency

7

in taste and appearance (page 2 of Nelson's Declaration). The grading step of Tesvich, so prominently relied upon by the Defendant, is still no proof that Mr. Nelson's conclusion should not be accorded probative weight.

In contrast, the product of the instant claimed invention is a "post-pressurized raw shellfish that is pressure-shucked and free from pathogenic naturally-occurring marine bacteria" and where sensory characteristics of raw shellfish have been retained. The product retains its consistency in taste, texture and appearance (page 2 of Nelson's Declaration).

The Plaintiffs also provided Section 132 Declaration of Mr. Alfred R. Sunseri (Exhibit D), who stated that a product produced according to Tesvich et al's patent and the Plaintiff's product are different in taste, texture and appearance (page 3 of Sunseri Declaration). Mr. Sunseri confirmed that due to difficulty of controlling the Tesvich process, one can see curling and shrinking of the edges of the meat in less dense-shell oysters; that protein degradation can produce partially cooked product. Mr. Sunseri's statements are further proof that persons of more than ordinary skill in the art can clearly see the distinctions between the mildly heat-treated product of Tesvich et al. and the post-pressurized product of the claimed invention.

At the very least, these statements and declarations raise several issues of fact that cannot be resolved in a summary judgment motion. These issues should be addressed in a trial, where persons of skill in the art can testify as to whether they recognize the teachings of Tesvich as disclosing the same invention, as viewed by a person of ordinary skill in the field of the invention.

## II. THE DEFENDANT'S REQUEST FOR REMAND SHOULD BE DENIED

In its Opposition, the Defendant again requests that the Court remand this case for further examination by the PTO. The Defendant asserts that Claims 6 and 27 of the application-in-suit are anticipated only by JP '156. Not only that, the Defendant also argues that all claims of this application are anticipated under the doctrine of inherency.

As the Plaintiffs submitted, MPEP § 1211 gives authority to BPAI to remand a case to the examiner for further search where it feels that the most pertinent art has not been cited, or to consider an amendment. 37 C.F.R. § 41.50(a)(1) states:

The Board, in its decision, may affirm or reverse the decision of the examiner in whole or in part on the grounds and on the claims specified by the examiner. The affirmance of the rejection of a claim on any of the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, except as to any ground specifically reversed. *The Board may also remand an application to the examiner*. (emphasis added)

37 C.F.R. § 41.50(a)(1)

The BPAI therefore, should have remanded the case to the examiner, directing him to examine the claims in view of JP '156 and not wait until after the applicant appealed the case to this Court. The PTO cannot claim that it suddenly "discovered" the new reference; it knew of this reference in January 10, 2000. The Solicitor asserts that this Court remanded the cases under similar circumstances in the past. In support of this proposition, the Solicitor cited ExxonMobil Chemical Patents Inc. v. Godici, 2002 WL 34233002 (D.D.C. 2002). However, in ExxonMobil, the Patent Office conducted a new search for prior art and discovered three patents not previously considered after the appeal to the District Court was filed. Similarly, in McNeely v. Commissioner of Patents,

9

334 F.Supp. 564 (D.C.D.C. 1971), the case was remanded because the Patent Office discovered prior art references after plaintiffs filed the action.

The Plaintiffs most strongly oppose the Solicitor's request for remand. The PTO's attempt to further prolong resolution of the issues before this Court should be denied.

Additionally, the Defendant's argument of anticipation based on JP '156 constitutes new issue and should be rejected by the Court. As the Court of Appeals for the Federal Circuit stated in In re Hedges, 783 F.2d 1038 (C.A.F.C. 1986), "[w]e and our predecessor court have not condoned the presentation of new grounds of rejection for the first time on appeal," citing In re Hounsfield, 699 F.2d 1320, 1324, 216 USPQ 1045, 1049 (Fed.Cir.1982); In re Zeidler, 682 F.2d 961, 967, 215 USPQ 490, 494 (CCPA 1982); In re Nygard, 341 F.2d 924, 928-9, 144 USPQ 586, 590 (CCPA 1965)."

In the instant case, JP '156 is not of record as an anticipatory reference; it was indicated as a reference to be considered in the event of "further prosecution or continuing application." The BPAI did not consider this reference as defeating novelty of the instant claims; it only indicated that it "would appear relevant." Solicitor, on his own accord, made a determination that the asserted claims are anticipated and now argues anticipation of the claims in view of JP '156, for the first time in the Summary Judgment Motion.

In In re Nygard, the Federal Circuit stressed, "[This court is a court of review and reasons for rejection not made in the Patent Office are not properly before us." 341 F.2d at 929. For this reason Solicitor's arguments should be rejected.

### III. THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL THEIR CLAIMS BECAUSE DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO ANY OF THE DEFENSES

"When a motion for summary judgment is made and supported as provided in this rule [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) Fed.R.Civ.P. When a party moves for summary judgment based on a lack of evidence by the other party, "Rule 56 requires entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In such a case, there are no facts to present to the Court in the motion, and the moving party must simply show the lack of evidence. *Id.* at 511.

The Plaintiffs have presented a proper motion for summary judgment in accordance with Rule 56, and Defendant has failed to present any evidence to support any of its defenses except reiterating the same arguments that the examiner and the Board made. The Plaintiffs have met their burden of opposing the Defendant's Summary Judgment by raising issues of fact that cannot be resolved on a Summary Judgment Motion. Without question, then, the Plaintiffs have met their burden under Rule 56 and Local Rule 56.1.

11

The Defendant has utterly failed to meet its undisputable burden to set forth specific facts showing that there is a genuine issue for trial on any of the claims. In the Opposition, Defendant presents a list of facts, with which it "agrees" or "disagrees." However, the Defendant fails to point out which of these facts raise genuine issues for trial. Hence, Defendant's presentation of facts, agreement or disagreement with the facts raises absolutely no genuine issue of material fact as to any of Defendant's defenses. Accordingly, Defendant has failed to meet its burden under Rule 56, and the Plaintiffs' Motion should prevail.

## IV. DEFENDANT HAS FAILED TO MEET ITS BURDEN OF SHOWING THAT FURTHER DISCOVERY IS NECESSARY CONCERNING ANY OF ITS DEFENSES

Although the Supreme Court has held that under Fed.R.Civ.P. 56(f), 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to its opposition,' <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986),</u> this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion." <u>Dreiling v. Peugeot Motors of America, Inc., 850 F.2d 1373,</u> (10th Cir. 988); *see also* Rule 56(f) Fed.R.Civ.P.

The Defendant's bare recitation of the prosecution file history and statements made by the examiner and the Board cannot raise a genuine issue of material fact to overcome the Plaintiffs' Motion. Here, other than references to the publications, Defendant's' only facts in opposition to Plaintiff's Motion consist of rote recitations of the examination file history. Yet, the application file history is unquestionably an "undisputed public record. It is axiomatic that a recitation of an "undisputed public

record" cannot establish a genuine dispute of material fact. Accordingly, Defendant's attempt to point to the file history fails, as a matter of law, to establish a genuine issue of material fact.

Since the Defendant presents no evidence concerning, and expresses no need for further discovery relating to the examiner's rejection or facts presented by the Plaintiffs, the file history provides Defendant with no support to its Opposition.

Accordingly, the Defendant has failed to come forward with any facts that raise a genuine issue of material fact as to any of Defendant's defenses. Therefore, the Plaintiffs' Motion should be granted and summary judgment awarded in favor of the Plaintiffs and against the Defendant on each of Defendant's defenses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to enter an order granting their motion for summary judgment and denying the defendant's cross-motion for summary judgment.

Respectfully submitted,

/s/Thomas S. Keaty
Thomas S. Keaty, *pro hac vice*
Attorney for Plaintiff
Keaty Professional Law Corporation
2140 World Trade Center
No. 2 Canal Street
New Orleans, LA 70130
(504) 524-2100
(504) 524-2105 (fax)