# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)  Civil Action No. 06-0825 (JR)<br>) |
| DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
DISMISSAL AND REMAND**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) .................................. 9

*American Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ............ 4

*American Wildlands v. Kempthorne*, 478 F. Supp. 2d 92 (D.D.C. 2007) ............. 4

*Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197
    (1938) ................................................................. 3

*Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966) .................. 3

*In re Dance*, 160 F.3d 1339 (Fed. Cir. 1998) ................................... 5

*Fregeau v. Mossinghoff*, 776 F.2d 1034 (Fed. Cir. 1985) ........................ 1,2

*Highlands Hospital Corp., Inc. v. NLRB*, 508 F.3d 28 (D.C. Cir. 2007) ............. 3

*Hyatt v. Dudas*, 2005 WL 5569663 ...................................... 2, 3, 4

*In re Jolley*, 308 F.3d 1317 (Fed. Cir. 2002) .................................. 3

*In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) ................................. 3

*In re Kulling*, 897 F.2d 1147 (Fed. Cir. 1990) ................................. 8

*Mazzari v. Rogan*, 323 F.3d 1000 (Fed. Cir. 2003) ............................ 2

*Morall v. Drug Enforcement Admin.*, 412 F.3d 165 (D.C. Cir. 2005) ............... 4

*In re Peterson*, 315 F.3d 1325 (Fed. Cir. 2003) ................................ 8

*Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002) ........ 9

### FEDERAL STATUTES

5 U.S.C. § 706 ......................................................... 2

35 U.S.C. § 102(e) ..................................................... 1

35 U.S.C. § 145 ........................................................ 2

**TABLE OF CONTENTS**

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  **Plaintiffs' Opposition Misperceives the Applicable  Standard of Review** . . . 1

B.  **Plaintiffs' Opposition Does Not Demonstrate That the Board's Rulings Were Unsupported By Substantial Evidence Or Based Upon Legal Errors.** . . . . . . 5

C.  **Remanding for Consideration of JP '156 Would Be an Appropriate  Use of Judicial and Administrative Resources If the Court Finds That Substantial Evidence Does Not Support the Board's Finding That Tesvich '064 Anticipates Plaintiffs' Claims.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

The Defendant, Director of the United States Patent and Trademark Office ("USPTO" or "Defendant"), respectfully submits this reply in support of its motion for summary judgment (Dkt. No. 28). The Board of Patent Appeals and Interferences ("Board") found that the claims at issue in this patent case are unpatentable under 35 U.S.C. § 102(e) because they are anticipated. The Board's decision is supported by substantial evidence, and summary judgment should therefore be entered for Defendant. In the alternative, if the Court finds that substantial evidence does not support the Board's decision, Defendant requests that the Court dismiss this case without prejudice and remand to the USPTO for further consideration in light of another prior art reference which discloses a high pressure treatment of raw oysters, and thus constitutes strong evidence that Innovatit's claims are unpatentable.

## ARGUMENT

### A. Plaintiffs' Opposition Misperceives the Applicable Standard of Review.

Plaintiffs begin their Opposition to Defendant's motion for summary judgment ("Opposition," or "Opp. Br.," Dkt. No. 33) by stating that the USPTO "has not satisfied its heavy burden to demonstrate entitlement to judgment as a matter of law by clear and convincing evidence." Opp. Br. at 2. Plaintiffs, however, misunderstand the standard of review to be applied in this case. *Plaintiffs* bear the ultimate burden of showing that the Board committed reversible error; Defendant does not carry the burden of showing that the Board's decision is correct. *See Fregeau v. Mossinghoff*, 776 F.2d 1034, 1038 (Fed. Cir. 1985) (in an action under 35 U.S.C. § 145, "the applicant has the laboring oar to establish error by the board"). As explained below, for Defendant to prevail in its summary judgment motion, it need only show

that the Board's findings of fact are supported by substantial evidence and its conclusions of law are correct.

In a section 145 action, the parties may, under some circumstances, submit new evidence to be considered by the Court in addition to the administrative record before the examiner and Board. *See Fregeau,* 776 F.2d at 1037. If the parties do so, then the Court takes on the role of fact-finder and may need to make factual findings. *See Hyatt v. Dudas*, 2005 WL 5569663, *3 (D.D.C. Sept. 30, 2005). In that limited circumstance, it may also review the Board's fact-finding *de novo* to the extent that the new evidence challenges particular Board findings. *See id.* But here, Plaintiffs have not submitted any new evidence to this Court. Instead, Plaintiffs rely *exclusively* upon the record before the Board. Thus, this Court's review is confined to the administrative record developed before the Board.

Because the USPTO is an agency of the U.S. government, the appeal of the Board's decision proceeds in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003) (holding that the USPTO is an agency subject to the APA, and therefore "a reviewing court must apply the APA's court/agency review standards"). Applying the APA's deferential standard of review, this Court may set aside the Board's factual findings only when they are "unsupported by substantial evidence," and may set aside legal conclusions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)*; Mazzari*, 323 F.3d at 1004-5. There is no *de novo* review in this case because the evidence before the Court is limited to the administrative record. *See Hyatt*, 2005 WL 5569663, at *7 ("Because Hyatt offers no other additional evidence aside from his declaration [which the court excluded], the court

reviews all of the Board's fact-findings using the more deferential 'substantial evidence' standard.").

Substantial evidence "is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Instead, courts may reverse for lack of substantial evidence "only when the record is so compelling that no reasonable factfinder could find to the contrary." *Highlands Hosp. Corp., Inc. v. NLRB*, 508 F.3d 28 (D.C. Cir. 2007). Accordingly, "[i]f the evidence in record will support several reasonable but contradictory conclusions," this Court must "not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002); *accord Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 176 (D.C. Cir. 2005) ("An agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.").

Finally, Plaintiffs correctly point out that summary judgment is appropriate only when there are no genuine issues of any material fact. Opp. Br. at 3. But this does not give Plaintiffs license to ignore the substantial-evidence standard of review, contrary to what Plaintiffs' Opposition seems to suggest. *See* Opp. Br. at 9-10 (requesting that purported factual disputes already decided by the Board be brought to trial, thereby reviewing *de novo* the findings of the Board). Rather, because Plaintiffs chose not to submit new evidence, Defendant's motion for

3

summary judgment is to be decided on the administrative record before the Board under the deferential substantial evidence standard. *See Hyatt*, 2005 WL 5569663 at *7-*10 (granting USPTO's motion for summary judgment because plaintiff was unable to show, based on administrative record, that the Board's findings were unsupported by substantial evidence). In cases reviewed under that deferential standard, the district court sits as an appellate tribunal to determine, as a matter of law, whether the administrative record contains evidence that supports the agency's underlying findings of fact and whether the agency erroneously applied the law. *See American Wildlands v. Kempthorne*, 478 F. Supp. 2d 92, 96 (D.D.C. 2007); *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). Thus where, as here, a section 145 case is evaluated based solely on the administrative record, Plaintiffs can defeat Defendant's summary judgment motion only by showing that substantial evidence does not support a material finding of the Board. As discussed below and in Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Board's findings of fact are supported by substantial evidence and its legal conclusions are correct. *See* Dkt. No. 28 ("Opening Brief" or "Br."). Thus, Defendant's motion for summary judgment should be granted.

      **B.**    **Plaintiffs' Opposition Does Not Demonstrate That the Board's Rulings Were Unsupported By Substantial Evidence Or Based Upon Legal Errors.**

Plaintiffs' Opposition essentially repeats the arguments raised below to the Board, relies on the same evidence before the Board, fails to address the problems with that evidence, and thus fails to show that the Board's decision is in error. Therefore, Defendant's motion for summary judgment should be granted.

Representative claim 5 reads:

> A post-pressurized raw shellfish that is pressure-shucked and free from pathogenic naturally-occurring marine bacteria and which has undergone treatment by exposing said raw shellfish to pressure of about between 20,000 p.s.i. and 50,000 p.s.i., said raw shellfish retaining sensory characteristics of raw product.

R169.[1]

Plaintiffs argue that Tesvich '064 does not anticipate the pending product-by-process claims because it does not disclose the claim limitations "post-pressurized" and "pressure shucked." Opp. Br. at 8. As explained in Defendant's Opening Brief, however, these terms do not confer patentability on the pending claims. *See* Dkt. No. 28. They simply refer to process steps of the product-by-process claims. They do not limit the resulting product. This is because they do not describe a physical or structural characteristic of the claimed shellfish (except for "pressure shucked" describing the claimed shellfish as shucked).

With regard to the term "post-pressurized," Plaintiffs essentially admit in their application that the term confers no structural characteristic. Plaintiffs tout as one benefit of the pressurization process the fact that it does *not* affect the physical characteristics of the processed shellfish, such that one would not be able to distinguish a "post-pressurized" oyster from an unpressurized oyster. *See*, *e.g.,* R11 ("It is another object of the present invention to provide a method of reducing harmful bacteria in raw shellfish without substantially affecting its sensory qualities").

---

[1] In its Opening Brief, Defendant argued that claim 5 is "representative" of all of the pending claims, and thus that the pending claims stand or fall with claim 5. Br. at 13-14 n.4. In their Opposition, Plaintiffs neither disputed this nor separately argued any of the claims. Thus, all of the pending claims stand or fall with claim 5. *See In re Dance*, 160 F.3d 1339, 1340 n.2 (Fed. Cir. 1998).

5

Similarly, the term "pressure-shucked" does not describe the structure of the product beyond simply being shucked. In other words, it simply refers to the method by which the shellfish is shucked. But whether shucking is performed by pressure or mechanically (as disclosed in Tesvich '064), the product is the same: a shucked oyster.

Plaintiffs further argue that the mild-heat-treatment process of Tesvich '064 cooks the treated oysters, such that they would be structurally distinct from the raw oysters of claim 5. Opp. Br. at 9. In support, Plaintiffs cite the letter of Dr. Kilgen ("Kilgen Letter," R171-2), in which she describes how heating "melts" the bonds holding a protein together, whereas pressure treatment "mechanical[ly] distrupt[s]" those bonds. *Id.* Defendant has already addressed the Kilgen Letter in its Opening Brief, and explained that even if everything Dr. Kilgen writes in her letter is taken as true, it would not rebut the Board's finding of anticipation. The Kilgen Letter simply does not support the notion that *any* heat treatment of oysters irreversibly alters the structure of the treated oysters. Rather, Dr. Kilgen states that the structural affects of heat treatment "depend on the level of heat" applied to the product. R171. This is entirely consistent with the teaching of Tesvich '064 that "mild" low temperature heat treatment can kill harmful bacteria and not cause irreversible structural changes to the treated oysters. *See* Tesvich '064, R56-E, col. 2, lines 31-36; 66-67. Nowhere in her letter does Dr. Kilgen state that the specific temperatures and treatment durations used in the mild-heat-treatment process of Tesvich '064 would necessarily cook the treated oysters. It does not, therefore, show that the Board's finding of anticipation is not supported by substantial evidence.

Plaintiffs also rely on the declaration of Mr. Sunseri for the proposition that the Tesvich '064 process is difficult to control and thus would inevitably produce cooked oysters. Opp. Br. at 9-10. Plaintiffs made a similar argument before the Board. R165-6. Defendant, however,

6

noted in its Opening Brief that the premise upon which Mr. Sunseri's opinion is based – that the Tesvich '064 process is performed on batches of oysters having significantly varying sizes and densities – is false. In actuality, Tesvich '064 teaches separating the oysters by size prior to treatment. *See* R56-G, col. 5, lines 4, 11-13 ("During the separation step 14 the product is also separated into grades according to size, and then placed on conveyors feeding to the banding machines."). Thus, by controlling the process by temperature, duration, *and* oyster size, harmful bacteria can be destroyed while keeping the meat raw.

In their Opposition, Plaintiffs do not address this point at all, much less dispute Defendant's reading of Tesvich '064. Instead, they merely repeat Mr. Sunseri's mistaken views of the Tesvich '064 process. Accordingly, the Sunseri Declaration does not establish that the Board's finding of anticipation was unsupported by substantial evidence, nor does that declaration otherwise defeat Defendant's motion for summary judgment.[2]

Similarly, Plaintiffs point to the Tesvich '601 patent (R182-88), which Plaintiffs characterize as a "refinement" of the Tesvich '064 process, as evidence that the Tesvich '064 process cannot kill bacteria without also cooking the treated oysters. Opp. Br. at 10. Tesvich '601 discloses selecting a warm-water bath temperature and duration so as to raise the temperature of the oyster meat within the shell to at least 49 °C (120.2 °F) to kill the bacteria but below 53 °C (131 °F) to avoid cooking the oyster. R185, col. 1, lines 52-60. Defendant argued in its Opening Brief that this argument was not persuasive because, as the Board noted, Tesvich '064 teaches adjusting the temperature and duration parameters to kill bacteria without cooking

---

[2] Plaintiffs also argue that the Sunseri Declaration is proof that the term "raw shellfish retaining sensory characteristics of raw product" is a structural limitation with respect to claim 5. Opp. Br. at 10. However, Defendant never argued that this term did not constitute a structural limitation. Defendant argues only that Tesvich '064 discloses a raw shellfish product. Br. at 16.

7

the shellfish, and that a person of ordinary skill in the art would require only routine experimentation to optimize these parameters to achieve this result. Br. at 17 (citing *In re Kulling*, 897 F.2d 1147, 1149 (Fed. Cir. 1990); *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003)). Nowhere in Plaintiffs' Opposition is this argument addressed, much less rebutted.

Finally, Plaintiffs argue that the Letter of Drs. Bell and Bankston ("Bell-Bankston Letter," R173-4) raises an issue of fact that precludes summary judgment in Defendant's favor. Opp. Br. at 9. According to Plaintiffs, the Bell-Bankston Letter states that "oysters treated by heat according to the Tesvich '064 method did not result in release of the adductor muscle and that manual shucking was required as a post-processing step." *Id.* This argument misses the point. It does not matter whether the Tesvich '064 mild-heat-treatment process *itself* causes the shucking of the oyster. The issue instead is whether the Tesvich '064 *reference as a whole* discloses shucking, which it does. *See Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) (holding that a claim is anticipated if a single prior art reference discloses each limitation in the claim either expressly or inherently). Tesvich '064 discloses mechanical shucking as a separate process step after mild heat treatment and before consumption. R56-F, col. 3, lines 5-9; R56-H, col. 8, lines 37-39. Thus, Tesvich '064 discloses a raw, bacteria-free, *shucked* oyster, which is all that is required for it to anticipate claim 5.

      **C.**      **Remanding for Consideration of JP '156 Would Be an Appropriate Use of Judicial and Administrative Resources If the Court Finds That Substantial Evidence Does Not Support the Board's Finding That Tesvich '064 Anticipates Plaintiffs' Claims.**

In its Opening Brief, Defendant argues that *if* this Court should determine that substantial evidence does not support the Board's rulings, it would be in the interest of judicial economy for the Court to remand this case to the USPTO for consideration of the patentability of the pending

claims in light of JP '156. Br. at 19-20. Three reasons support a remand under such circumstances: First, the Board in its decision advised the examiner that in the event of further prosecution of the pending claims, he should consider the patentability of the pending claims in view of JP '156. R242-3. Thus, if Plaintiffs prevail in the instant case, the pending claims will almost certainly be examined in light of JP '156 regardless whether this Court remands for that purpose. Second, because JP '156 discloses virtually the same process as that claimed, the examiner will almost certainly reject the pending claims in light of JP '156. Finally, it would be a waste of judicial resources to resolve this case on the merits and award judgment to Plaintiffs if, regardless of that outcome, the pending claims are likely to be invalidated as a result of JP '156.

In their Opposition, Plaintiffs argue that Defendant is raising a "new issue" by making this recommendation. Opp. Br. at 6. Defendant disagrees. Defendant is not suggesting that the Court consider whether JP '156 invalidates the pending claims in the first instance. Rather, Defendant is suggesting that the Court should remand to the USPTO for such consideration *if* the Court finds that summary judgment on the current record would be inappropriate.[3]

---

[3] Defendant never alleged, as Plaintiffs suggest, Opp. Br. at 6, that JP '156 was "newly discovered" prior art. Nor does it need to be for the USPTO to examine the pending claims with respect to this reference. The fact that the examiner rejected the pending claims as anticipated by Tesvich '064 does not prevent the USPTO from thereafter rejecting those claims in light of a different reference. *See In re Alappat*, 33 F.3d 1526, 1535 (Fed. Cir. 1994) ("Commissioner has an obligation to refuse to grant a patent if he believes that doing so would be contrary to law.").

**CONCLUSION**

Based on the foregoing and on Defendant's Opening Brief, Defendant's motion for summary judgment should be granted or, in the alternative, the case should be remanded to the Board for further consideration in light of the JP '156 prior art reference.

                Respectfully submitted,

                /s/ Jeffrey A. Taylor
                JEFFREY A. TAYLOR, D.C. Bar # 498610
                United States Attorney
                /s/ Rudolph Contreras
                RUDOLPH CONTRERAS, D.C. Bar # 434122
                Assistant United States Attorney

                /s/ Robin M. Meriweather
                ROBIN M. MERIWEATHER, D.C. Bar # 490114
                Assistant United States Attorney
                Civil Division
                555 Fourth Street, N.W.
                Washington, D.C. 20530
                202/514-7198
                202/514-8780 (facsimile)

Of Counsel:

STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

January 4, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATIT SEAFOOD SYSTEMS, LLC., *et al.* )<br>)<br>Plaintiffs,                            )<br>)<br>v.                                        )<br>)<br>DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE,                )<br>)<br>Defendant.                        )<br>_____) | Civil Action No. 06-0825 (JR) |

**RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant hereby responds to Plaintiffs' objections to Defendant's Statement of Undisputed Material Facts. Plaintiffs do not appear to dispute the majority of the facts set forth in Defendant's statement. However, Plaintiffs disagree with portions of Paragraphs 11,[4] 15, 25-31. Plaintiffs' position is incorrect, and none of the issues they raise preclude entry of summary judgment in favor of Defendant.

With respect to Paragraph 11, Plaintiffs take issue with Defendant's statement that Tesvich '064 teaches a bacteria-free product. Opp. Br. at 7. Plaintiffs contend that the Tesvich '064 process only reduces, but does not eliminate, pathogenic bacteria on oysters. *Id.* Plaintiffs are wrong. Tesvich '064 teaches that its disclosed process "will permit the consumer to still consume his mollusk on the halfshell, in a raw state, *with the harmful bacteria destroyed* through

---

[4] All paragraph references are to the individually numbered paragraphs in Defendant's Statement of Material Facts in Support of Defendant's Motion for Summary Judgment. *See* Dkt. No. 28.

the novel process of the instant invention." R56-E, col. 2, lines 20-23 (emphasis added). *See also* R56-E, col. 2, line 66 - R56-F, col. 3, line 1 ("the pathogenic bacteria may be reduced to an undetectable level by this process"); R56-G, col. 6, lines 33-36 ("By employing the aforementioned process, one reduces or even destroys the harmful bacteria."). Thus, the Board's finding that Tesvich '064 discloses the bacteria-free limitation is supported by substantial evidence.

Plaintiffs also disagree with Defendant's statement in paragraph 11 that Tesvich '064 discloses a shucked oyster. Opp. Br. at 7. Plaintiffs contend that "the Tesvich process" does not produce a shucked product, but admit that Tesvich '064 teaches shucking of the oyster per the known "raw bar style" of preparation. *Id.* Plaintiffs imply that the Tesvich '064 process itself must cause the shucking of the oyster in order for Tesvich '064 to anticipate the pending claims. As argued *infra*, however, this is not the case. Tesvich '064 need only disclose shucking somewhere within the four corners of the document; it is not necessary that shucking result from the same heat-treatment process that disinfects the oyster. The Board's finding that Tesvich '064 discloses a shucked oyster is therefore supported by substantial evidence.

In their objections to paragraph 15, Plaintiffs again take issue with Defendant's statement that the Tesvich '064 process destroys *Vibrio* bacteria. Plaintiffs again claim that the Tesvich '064 process only "reduc[es] to a lower level" the pathogenic bacteria on the treated oysters. Opp. Br. at 8. As pointed out above, Plaintiffs' position is incorrect. Substantial evidence supports the Board's finding that Tesvich '064 teaches a bacteria-free oyster. *See* R56-E, col. 2, lines 20-23; R56-E, col. 2, line 66 - R56-F, col. 3, line 1; R56-G, col. 6, lines 33-36.

Plaintiffs further quibble with Defendant's use of the term "rapid," in paragraph 15, to describe the cool-down step of the Tesvich '064 process. Opp. Br. at 8. While reasonable minds

2

may differ as to how rapidly a continuously flowing cold water bath will cool down the previously heated oysters, this is not an issue that is material to the present case. What is material is that the Tesvich '064 process kills pathogenic bacteria on the treated oysters without cooking them. Furthermore, there is no dispute that Tesvich '064 teaches a cool-down step. *See, e.g.,* R56-G, col. 5, line 57 - col. 6, line 7.

Plaintiffs further allege that while the refrigeration step in Tesvich '064 is performed after the cool-down step, the instant claims require refrigeration "immediately following" high-pressure processing. Opp. Br. at 8. Again, Plaintiffs are wrong. There is nothing in any of the pending product-by-process claims that requires refrigeration "immediately" after processing. Moreover, claim 5 does not recite refrigeration at all, and Plaintiffs have effectively conceded that all of the pending claims stand or fall with claim 5. *See* Reply Memorandum at 4 n.1.

Finally, Plaintiffs object to Defendant's proposed findings with regard to JP '156 found in paragraphs 25-31 because they are not "material" to any of the issues involved in this appeal. Opp. Br. at 8. Defendant agrees that JP '156 is not directly related to whether Tesvich '064 anticipates the pending claims; however, it is relevant to Defendant's request for remand as an alternative to proceeding to trial. This is discussed more fully in section C of Defendant's Reply Memorandum.

                                          Respectfully submitted,

                                               /s/ Jeffrey A. Taylor
                                      JEFFREY A. TAYLOR, D.C. Bar # 498610
                                      United States Attorney
                                           /s/ Rudolph Contreras
                                      RUDOLPH CONTRERAS, D.C. Bar # 434122
                                      Assistant United States Attorney

           /s/ Robin M. Meriweather
      ROBIN M. MERIWEATHER, D.C. Bar # 490114
      Assistant United States Attorney
      Civil Division
      555 Fourth Street, N.W.
      Washington, D.C.  20530
      202/514-7198
      202/514-8780 (facsimile)

Of Counsel:

STEPHEN WALSH
Acting Solicitor

BENJAMIN D. M. WOOD
JANET GONGOLA
Associate Solicitors
United States Patent and Trademark Office

January 4, 2008